THE HAKALA LAW GROUP, P.C.
Brad A. Hakala, CA Bar No. 236709
Ryan N. Ostrowski, CA Bar No. 305293
One World Trade Center, Suite 1870
Long Beach, California 90831
Telephone: 562.432.5023
Facsimile:   562.786.8606
Email:       bhakala@hakala-law.com
             rostrowski@hakala-law.com

Attorneys for Plaintiff – DHS VERDE, LLC,
a California Limited Liability Company

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| DHS VERDE, LLC, a California Limited Liability Company;<br><br>          Plaintiff,<br><br>     v.<br><br>COACHILLIN HOLDINGS, LLC, a California Limited Liability Company; COACHILLIN ENERGY COMPANY, LLC, a California Limited Liability Company; ECOMASTER CORPORATION, a California Corporation; INDIAN CANYON & 18th PROPERTY OWNERS ASSOCIATION, a California nonprofit mutual benefit corporation; KENNETH DICKERSON, an Individual; WILLIAM MORELAND, an Individual; KATHERINE BENETEAU (a/k/a KATHERINE DICKERSON), an Individual; MICHAEL DICKERSON, an Individual; KIRSTEN DICKERSON, an Individual; and DOES 1 through 50, inclusive.<br><br>          Defendants. | Case No.: 5:22-cv-943<br><br>**COMPLAINT FOR DAMAGES:**<br><br>**1. BREACH OF CONTRACT**<br><br>**2. BREACH OF CC&RS**<br><br>**3. BREACH OF FIDUCIARY DUTY**<br><br>**4. BREACH OF FIDUCIARY DUTY**<br><br>**5. FRAUD - INTENTIONAL MISREPRESENTATION**<br><br>**6. NEGLIGENT MISREPRESENTATION**<br><br>**7. FRAUD – CONCEALMENT**<br><br>**8. VIOLATION OF RACKETEERING INFLUENCED AND CORRUPTION ORGANIZATION ACT ("RICO") [18 U.S.C. §1961 *et seq.*]**<br><br>**9. CONSPIRACY TO VIOLATE RICO**<br><br>**10. REAL ESTATE SELLER'S NONDISCLOSURE OF MATERIAL FACTS** |

1

1
2
3
4
5
6
7
8
9

**11. INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**

**12. DECLARATORY RELIEF**

**13. VIOLATION OF BUS. & PROF. CODE §17200 (UNFAIR COMPETITION)**

**DEMAND FOR JURY TRIAL**

**DEMAND FOR INJUNCTIVE RELIEF**

10     **TO THIS HONORABLE COURT, ALL PARTIES, AND THEIR**

11 **ATTORNEYS OF RECORD HEREIN:**

12     Plaintiff, DHS VERDE, LLC (hereinafter referred to as "DHS VERDE,"

13 "PLAINTIFF," and/or "Plaintiff"), a California Limited Liability Company,

14 complains against the above named Defendants: COACHILLIN HOLDINGS,

15 LLC, a California Limited Liability Company (hereinafter referred to as

16 "COACHILLIN"), COACHILLIN ENERGY COMPANY, LLC, a California

17 Limited Liability Company (hereinafter referred to as "ENERGY"), ECOMASTER

18 CORPORATION, a California Corporation (hereinafter referred to as

19 "ECOMASTER"), INDIAN CANYON & 18th PROPERTY OWNERS

20 ASSOCIATION, a California nonprofit mutual benefit corporation (hereinafter

21 referred to as the "POA"), KENNETH DICKERSON, an Individual (hereinafter

22 referred to as "KENNETH"), WILLIAM MORELAND, an Individual (hereinafter

23 referred to as "WILLIAM"), KATHERINE BENETEAU (a/k/a KATHERINE

24 DICKERSON), an Individual (hereinafter referred to as "KATHERINE"),

25 MICHAEL DICKERSON, an Individual (hereinafter referred to as "MICHAEL"),

26 and KIRSTEN DICKERSON, an Individual (hereinafter referred to as

27 "KIRSTEN"), (COACHILLIN, ENERGY, ECOMASTER, POA, KENNETH,

28 WILLIAM, KATHERINE, MICHAEL, and KIRSTEN, shall also each be referred

COMPLAINT FOR DAMAGES

to herein individually as "DEFENDANT" and/or collectively as the "DEFENDANTS"), and all named Defendants for general, compensatory, punitive, and exemplary damages, attorneys' fees, and costs, and injunctive relief, resulting from DEFENDANTS' unlawful and tortious conduct, and as grounds therefore alleges:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter under 28 U.S.C. § 1331 because this case arises under the laws of the United States, including without limitation, under the Racketeering Influenced and Corruption Organization Act, 18 U.S.C. §1961, *et seq.* ("RICO").  This Court also has pendent jurisdiction over the related California state law claims pursuant to 28 U.S.C. §1367, as such claims are derived from a common nucleus of operative facts as those claims that arise under the laws of the United States.

2.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1), (b)(2), (c), and (d) because a substantial number of the Defendants reside in this judicial district and a substantial part of the events or omissions giving rise to this Complaint occurred in this judicial district.  PLAINTIFF DHS VERDE maintains its business operations in Riverside County, California.  Moreover, this is the judicial district in which the DEFENDANTS, and each of them, both maintain their business operations and reside, and a substantial part of the events giving rise to PLAINTIFF'S claims have occurred and are continuing to occur within this judicial district.

///
///
///
///
///

COMPLAINT FOR DAMAGES

**PARTIES**

3.   PLAINTIFF DHS VERDE, LLC, is and at all times mentioned herein was, a limited liability company duly organized and existing under the laws of the State of California, with the capacity to sue and to be sued in California, and doing business in California, Riverside County, with a principal place of business located at 18462 Skywalker Court, Desert Hot Springs, California 92240.

4.   PLAINTIFF is informed and believes and thereon alleges that DEFENDANT COACHILLIN HOLDINGS, LLC is, and at all times mentioned herein was, a limited liability company duly organized and existing under the laws of the State of California, with the capacity to sue and to be sued in California, and doing business in California, Riverside County, with a principal place of business located at 71713 Highway 111, Suite 100, Rancho Mirage, California 92270. PLAINTIFF is informed and believes and thereon alleges that Defendant COACHILLIN is, and at all relevant times has participated in the theft of monies from PLAINTIFF, and in the management and operation of the RICO enterprise alleged herein.

5.   PLAINTIFF is informed and believes and thereon alleges that DEFENDANT COACHILLIN is, and at all times herein mentioned was, wholly owned by DEFENDANTS KENNETH, WILLIAM, and additional family members of WILLIAM.

6.   PLAINTIFF is informed and believes and thereon alleges that DEFENDANT COACHILLIN ENERGY COMPANY, LLC is, and at all times mentioned herein was, a limited liability company duly organized and existing under the laws of the State of California, with the capacity to sue and to be sued in California, and doing business in California, Riverside County, with a principal place of business located at 71713 Highway 111, Suite 100, Rancho Mirage, California 92270.  PLAINTIFF is informed and believes and thereon alleges that Defendant ENERGY is, and at all relevant times has participated in the theft of

COMPLAINT FOR DAMAGES

monies from PLAINTIFF, and in the management and operation of the RICO enterprise alleged herein.

7.    PLAINTIFF is informed and believes and thereon alleges that DEFENDANT ENERGY is, and at all times herein mentioned was, wholly owned by DEFENDANTS KENNETH, WILLIAM, and additional family members of WILLIAM.

8.    PLAINTIFF is informed and believes and thereon alleges that DEFENDANT ECOMASTER CORPORATION is, and at all times mentioned herein was, a corporation duly organized and existing under the laws of the State of California, with the capacity to sue and to be sued in California, and doing business in California, Riverside County, with a principal place of business located at 71713 Highway 111, Suite 103, Rancho Mirage, California 92270.  PLAINTIFF is informed and believes and thereon alleges that Defendant ECOMASTER is, and at all relevant times has participated in the theft of monies from PLAINTIFF, and in the management and operation of the RICO enterprise alleged herein.

9.    PLAINTIFF is informed and believes and thereon alleges that DEFENDANT ECOMASTER is, and at all times herein mentioned was, wholly owned by DEFENDANT KENNETH.

10.    PLAINTIFF is informed and believes and thereon alleges that DEFENDANT INDIAN CANYON & 18th PROPERTY OWNERS ASSOCIATION is, and at all times mentioned herein was, a nonprofit mutual benefit corporation duly organized and existing under the laws of the State of California, with the capacity to sue and to be sued in California, and doing business in California, Riverside County, with a principal place of business located at 71713 Highway 111, Suite 104, Rancho Mirage, California 92270.  PLAINTIFF is informed and believes and thereon alleges that Defendant POA, by and through the unlawful conduct of the other individually named DEFENDANTS, as alleged herein, is, and at all relevant times has participated in the theft of monies from

1  PLAINTIFF, and in the management and operation of the RICO enterprise alleged
2  herein.

3       11.    PLAINTIFF is informed and believes and thereon alleges that
4  DEFENDANT KENNETH DICKERSON is, and at all times mentioned herein
5  was, an individual with the capacity to sue and to be sued in California, and doing
6  business in California, Riverside County, with his principal address located at
7  78895 Zenith Way, La Quinta, California 92253.  PLAINTIFF is informed and
8  believes and thereon alleges that Defendant KENNETH is, and at all relevant times
9  has participated in the theft of monies from PLAINTIFF, and in the management
10 and operation of the RICO enterprise alleged herein.

11      12.    PLAINTIFF is informed and believes and thereon alleges that
12 DEFENDANT WILLIAM MORELAND is, and at all times mentioned herein was,
13 an individual with the capacity to sue and to be sued in California, and doing
14 business in California, Riverside County, with his principal place of business
15 located at 71713 Highway 111, Suite 100, Rancho Mirage, California 92270.
16 PLAINTIFF is informed and believes and thereon alleges that Defendant
17 WILLIAM is, and at all relevant times has participated in the theft of monies from
18 PLAINTIFF, and in the management and operation of the RICO enterprise alleged
19 herein.

20      13.    PLAINTIFF is informed and believes and thereon alleges that
21 DEFENDANT KATHERINE BENETEAU, (a/k/a KATHERINE DICKERSON)
22 is, and at all times mentioned herein was, an individual with the capacity to sue and
23 to be sued in California, and doing business in California, Riverside County, with
24 her principal place of business located at 71713 Highway 111, Suite 100, Rancho
25 Mirage, California 92270.  PLAINTIFF is informed and believes and thereon
26 alleges that Defendant KATHERINE is, and at all relevant times has participated
27 in the theft of monies from PLAINTIFF, and in the management and operation of
28 the RICO enterprise alleged herein.

14.    PLAINTIFF is informed and believes and thereon alleges that DEFENDANT MICHAEL DICKERSON is, and at all times mentioned herein was, an individual with the capacity to sue and to be sued in California, and doing business in California, Riverside County, with his principal place of business located at 71713 Highway 111, Suite 100, Rancho Mirage, California 92270. PLAINTIFF is informed and believes and thereon alleges that Defendant MICHAEL is, and at all relevant times has participated in the theft of monies from PLAINTIFF, and in the management and operation of the RICO enterprise alleged herein.

15.    PLAINTIFF is informed and believes and thereon alleges that DEFENDANT KIRSTEN DICKERSON is, and at all times mentioned herein was, an individual with the capacity to sue and to be sued in California, and doing business in California, Riverside County, with her principal place of business located at 71713 Highway 111, Suite 100, Rancho Mirage, California 92270. PLAINTIFF is informed and believes and thereon alleges that Defendant KIRSTEN is, and at all relevant times has participated in the theft of monies from PLAINTIFF, and in the management and operation of the RICO enterprise alleged herein.

16.    PLAINTIFF is currently unaware of the true names and capacities, whether corporate, associate, individual, or otherwise, of Defendants sued herein as DOES 1 through 50, Inclusive, and therefore sues said DEFENDANTS, and each of them, by such fictitious names.  PLAINTIFF will seek leave of Court to amend this Complaint to assert the true names and capacities of the fictitiously named DEFENDANTS when the same have been ascertained.  PLAINTIFF is informed and believes, and thereon alleges, that each Defendant designated as a "DOE" herein is legally responsible for the events, happenings, acts, occurrences, indebtedness, damages, and liabilities hereinafter alleged and caused injuries and damages proximately caused thereby to the PLAINTIFF, as hereinafter alleged.

COMPLAINT FOR DAMAGES

17.     PLAINTIFF is informed and believes and thereon alleges, that at all times relevant herein, DEFENDANTS, and each of them, including DOES 1 through 50, inclusive, were an owner, co-owner, agent, representative, partner, joint venture, director, manager, officer, controller, and/or alter ego of its co-defendants, or otherwise acting on behalf of each and every remaining DEFENDANT and, in doing the things hereinafter alleged, were acting within the course and scope of their authorities as an owner, a co-owner, an agent, representative, partner, joint venture, director, manager, officer, controller, and/or alter ego of its co-defendants, and at all times herein mentioned, working in concert with his, her, and/or its co-defendants and was acting with the advance knowledge, permission, consent of, acquiescence, and ratification, in concert with, and in conspiracy with, each and every one of the remaining DEFENDANTS.

18.     PLAINTIFF is informed and believes and thereon alleges that at all relevant times herein, DEFENDANTS were agents of the remaining DEFENDANTS, and in doing the acts and/or failing to act, as alleged herein, the DEFENDANTS were acting within the course and scope of such agency. DEFENDANTS ratified and/or authorized the wrongful acts of each of the other DEFENDANTS.  DEFENDANTS, and each of them, are individually sued, in part, as participants and as aiders and abettors in the improper acts, plans, schemes, and transactions that are the subject of this Complaint.

19.     PLAINTIFF is informed and believes and thereon alleges that at all relevant times herein, DEFENDANTS, and each of them, pursued a conspiracy, common enterprise, and common course of conduct to accomplish the wrongs complained of herein.   The purpose and effect of the conspiracy, common enterprise, and common course of conduct complained of within this Complaint was, *inter alia*, to the benefit of the DEFENDANTS personally and their respective family members and all to the significant detriment of the PLAINTIFF by engaging in illegal, fraudulent, and wrongful activities.  The DEFENDANTS, and each of

them, are a direct, necessary, and substantial participant in the conspiracy, common enterprise, and common course of conduct complained of herein, and each DEFENDANT was aware, at all relevant times herein, that his/her/its overall contribution to, and furtherance of, the conspiracy, common enterprise, and common course of conduct. The DEFENDANTS, and each of their acts of conspiracy include, *inter alia*, all of the acts that DEFENDANTS are alleged to have committed in furtherance of the wrongful and unlawful conduct complained of herein.

20. PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS KIRSTEN, KATHERINE, and MICHAEL are related to DEFENDANT KENNETH, and that KIRSTEN, KATHERINE, and MICHAEL are substantially involved with the day to day management, supervision, and administration of DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, and the POA, and that DEFENDANTS KIRSTEN, KATHERINE, and MICHAEL have themselves, and in association with DEFENDANT KENNETH, engaged in self-dealing, conflicts of interest, thefts of monies, and agreed upon, acquiesced in, and permitted DEFENDANTS KENNETH, WILLIAM, COACHILLIN, ENERGY, ECOMASTER, and the POA to engage in the unlawful and egregious conduct and criminal enterprise alleged herein unchecked and with rampant abuse. Moreover, DEFENDANTS KENNETH, KIRSTEN, KATHERINE, and MICHAEL have perpetrated this unlawful behavior, in part, by sending threatening and harassing demands, as well as invoices and requests for impermissible payments to PLAINTIFF, that are unlawful, fraudulent, improper, unwarranted, threatening, and harassing.

21. PLAINTIFF is informed and believes, and thereon alleges that KENNETH, WILLIAM and their respective family members, including KIRSTEN, KATHERINE, and MICHAEL, as well as similarly situated persons and their respective families fully operate, manage, dominate, and/or control COACHILLIN

and ENERGY, and their respective affairs, control their respective decisions, and receive monies collected by COACHILLIN and ENERGY through their unlawful and improper assessment of fees, charges, and costs, as is set forth and delineated within this Complaint.   DEFENDANTS KENNETH, WILLIAM, KIRSTEN, KATHERINE, MICHAEL, and each of them, treat COACHILLIN and ENERGY as their own, and completely control and dominate each and every act, omission, and all conduct of both COACHILLIN and ENERGY.   KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL'S control and actions dictating the conduct of both COACHILLIN and ENERGY, is in direct contravention of California law and the various agreements and documents identified herein.  Due to KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL'S conduct, both COACHILLIN and ENERGY have each ceased being a separate entity and are each under the exclusive control and guidance of KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL, and both COACHILLIN and ENERGY are being used by such DEFENDANTS as their own bank and means to pay off debts, obligations, and liabilities owed by such DEFENDANTS.  PLAINTIFF is informed and believes, and thereon alleges that such individual DEFENDANTS knowingly, voluntarily, and willingly, yet unlawfully, exchanged monies between DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, and the POA, all for their personal benefit and to the detriment of the PLAINTIFF.

22.   PLAINTIFF is informed and believes, and thereon alleges that KENNETH and his respective family members, including KIRSTEN, KATHERINE, and MICHAEL, as well as similarly situated persons and their respective families fully operate, manage, dominate, and/or control ECOMASTER and its respective affairs, control its respective decisions, and receive monies collected by ECOMASTER through its unlawful and improper assessment of fees, charges, and costs, as is set forth and delineated within this Complaint. DEFENDANTS KENNETH, KIRSTEN, KATHERINE, MICHAEL, and each of

them, treat ECOMASTER as their own and completely control and dominate each and every act, omission, and all conduct of ECOMASTER.  KENNETH, KIRSTEN, KATHERINE, and MICHAEL'S control and actions dictating the conduct of ECOMASTER is in direct contravention of California law and the various agreements and documents identified herein.   Due to KENNETH, KIRSTEN, KATHERINE, and MICHAEL'S conduct, ECOMASTER has ceased being a separate entity and is under the exclusive control and guidance of KENNETH, KIRSTEN, KATHERINE, and MICHAEL, and ECOMASTER is being used by such DEFENDANTS as their own bank and means to pay off debts, obligations, and liabilities owed by such DEFENDANTS.  PLAINTIFF is informed and believes, and thereon alleges that such individual DEFENDANTS knowingly, voluntarily, and willingly, yet unlawfully, exchanged monies between DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, and the POA, all for their personal benefit and to the detriment of the PLAINTIFF.

23.    PLAINTIFF is informed and believes, and thereon alleges that KENNETH, WILLIAM and their respective family members, including KIRSTEN, KATHERINE, and MICHAEL, as well as similarly situated persons and their respective families fully operate, manage, dominate, and/or control the POA and its respective affairs, control its respective decisions, make unilateral decisions in contravention of the POA's Covenants, Conditions and Restrictions without requisite approval by the Board of Directors, and receive monies collected by the POA through their unlawful and improper unilateral assessment of fees, charges, and costs, as is set forth and delineated within this Complaint. DEFENDANTS KENNETH, WILLIAM, KIRSTEN, KATHERINE, MICHAEL, and each of them, treat the POA as their own and often attempt to completely and arbitrarily control and dominate each and every act, omission, and all conduct of the POA, all without requisite Board involvement and/or approval.  KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL'S control and actions dictating the conduct of the

POA is in direct contravention of California law and the various agreements and documents identified herein.  KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL, by and through their conduct, as alleged within this Complaint, have unilaterally attempted to cause the POA to cease being a separate entity, and is ostensibly under the exclusive control and guidance of KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL as the POA is being used by such DEFENDANTS not only as their own bank and means to pay off debts, obligations, and liabilities owed by such DEFENDANTS, but is being used by KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL as a weapon against the PLAINTIFF to achieve and further the unlawful common enterprise between such DEFENDANTS and their respective entities, as is set forth herein.

24.    PLAINTIFF is informed and believes, and thereon alleges that DEFENDANTS KIRSTEN and KATHERINE are related to KENNETH, that KIRSTEN and KATHERINE are involved with the day to day management, supervision, and administration of the POA acting in the positions of Executive Director and Secretary of the POA, respectively, that KIRSTEN and KATHERINE are involved with the day to day management, supervision, and administration of ECOMASTER, another entity owned by KENNETH, and that KIRSTEN and KATHERINE have engaged in self-dealing, conflicts of interest, and agreed upon, acquiesced in, and permitted KENNETH, COACHILLIN, ECOMASTER, and ENERGY to engage in the conduct alleged herein unchecked and with rampant abuse.  Further, KIRSTEN and KATHERINE have perpetuated this fraudulent, unlawful, and improper behavior by sending invoices, demands, and requests for payment to PLAINTIFF that are unlawful, fraudulent, improper, harassing, and unwarranted.  In furtherance of and in conjunction with the aforementioned acts, DEFENDANT KENNETH also used such unlawful, fraudulent, improper, harassing, and unwarranted demands and requests for payments to threaten PLAINTIFF with foreclosure for non-payment.  Additionally, KIRSTEN and

COMPLAINT FOR DAMAGES

1   KATHERINE have permitted COACHILLIN, ENERGY, ECOMASTER and
2   KENNETH to engage in this conduct and have shirked their duties and obligations
3   owed to the POA and its members, including PLAINTIFF, all to its detriment.

4       25.   PLAINTIFF is informed and believes, and thereupon alleges, that
5   PLAINTIFF'S damages are actually and proximately caused by the
6   DEFENDANTS, and each of them, jointly and severally.

7       26.   Wherever appearing in this Complaint, each and every reference to
8   defendant, DEFENDANT, Defendants, DEFENDANTS and any of them, is
9   intended to be and shall be a reference to all DEFENDANTS hereto, and to each of
10  them, named and unnamed, including all fictitiously named DEFENDANTS,
11  unless said reference is otherwise specifically qualified.

12      27.   Whenever and wherever reference is made in this Complaint to any
13  act by a Defendant or Defendants, such allegations and reference shall also be
14  deemed to mean the acts and failures to act of each DEFENDANT acting
15  individually, jointly, and severally.

16

17                        **ALTER EGO ALLEGATIONS**

18      28.   PLAINTIFF is informed and believes Defendants KENNETH,
19  WILLIAM, KATHERINE, KIRSTEN, and MICHAEL, and Defendant DOES 1
20  through 50, inclusive, (hereinafter collectively referred to as "Defendant
21  Members") are, and at all times herein mentioned were, members and/or holders of
22  ownership units or shares of stock of various business entities, including without
23  limitation, COACHILLIN, ECOMASTER, and ENERGY (hereinafter referred to
24  as "Defendant Companies") and/or promoters of Defendant Companies, and/or
25  subscribers to units and/or shares therein.  Such Defendant Companies were and
26  are mere sham and shell entities incorporated, organized, and operated as the
27  complete and total alter ego of the Defendant Members, for their personal benefit
28  and advantage in that the Defendant Members have, at all times herein mentioned,

13
_____
COMPLAINT FOR DAMAGES

exercised total dominion and control over the Defendant Companies.  There exists, and at all times herein mentioned existed, a unity of interest between Defendant Members and Defendant Companies such that any individuality and separateness between Defendant Members and Defendant Companies either never existed or has ceased, and the Defendant Companies are the alter ego of one another as well as the Defendant Members as follows:

(a) PLAINTIFF is informed and believes and thereon alleges that Defendant Companies are, and at all times herein mentioned were, a mere shell and sham without sufficient capital, assets, shares, shareholders, units, members, and/or unitholders.  Said Defendant Companies were conceived, intended, and used by Defendant Members as a device to avoid individual liability and for the purpose of substituting financially insolvent business entities in the place of the Defendant Members. PLAINTIFF is informed and believes and thereon alleges that at no time after the Defendant Companies became incorporated and/or organized were any shares of stock and/or ownership units authorized to be issued or issued nor has any permit for issuance of any shares of stock and/or ownership units been applied for with any appropriate governmental agencies.

(b) PLAINTIFF is informed and believes and thereon alleges that Defendant Companies are, and at all times herein mentioned were, so inadequately capitalized that, compared with the business to be done by any of the Defendant Companies and the risks of loss attendant thereto, the Defendant Companies' capitalization was illusory or trifling.

(c) PLAINTIFF is informed and believes and thereon alleges that Defendant Companies are, and at all times herein mentioned were, the alter ego of each other as well as the Defendant Members and the POA and there exists, and at all times herein mentioned existed, a unity of ownership

COMPLAINT FOR DAMAGES

between DEFENDANTS such that any separateness has ceased to exist in that the Defendant Members and the POA has used assets of the Defendant Companies and the POA for their personal use, caused assets of the Defendant Companies and the POA to be transferred to each other as well as themselves without adequate consideration, and withdrew funds from the Defendant Companies' and the POA's bank accounts for their personal use.

(d) PLAINTIFF is informed and believes and thereon alleges that the Defendant Companies are, and at all times mentioned herein were a mere shell, instrumentality, and conduit through which the Defendant Members carried on their business in the name of the Defendant Companies as they conducted it previous to the incorporation and/or organization of the Defendant Companies, exercising complete control and dominance of such entities to such an extent that any individuality or separateness of the Defendant Companies and the Defendant Members does not now, and at any time herein mentioned did not, exist.

(e) PLAINTIFF is informed and believes and thereon alleges that the Defendant Companies are, and at all times herein mentioned were managed, controlled, dominated, and operated by the Defendant Members as their individual businesses and alter ego, in that the activities and business of the Defendant Companies were carried out without the holding of any Board, Shareholder, Manager, or Member meetings, no records or minutes of any company proceedings were maintained, and the Defendant Members entered into personal transactions with the Defendant Companies and the POA without the approval of other Board Members, Shareholders, Managers, Members, or Unitholders.

(f) PLAINTIFF is informed and believes and thereon alleges that adherence to the fiction of separate existence of the Defendant Companies as an

COMPLAINT FOR DAMAGES

entity or entities distinct from the Defendant Members would permit abuse of the business entity privilege and would sanction fraud and promote injustice in that the Defendant Members caused funds to be withdrawn from the Defendant Companies and/or the POA, and distributed said funds without any consideration to the Defendant Companies and/or the POA all for their personal benefit as well as the purpose of avoiding and preventing attachment and execution by creditors, including the PLAINTIFF, thereby rendering the Defendant Companies insolvent and unable to adequately meet its obligations.

(g) PLAINTIFF is informed and believes and thereon alleges that, at all times relevant hereto, the Defendant Members, the Defendant Companies, and the POA, by and through the individual DEFENDANTS, improperly acted for each other, in place of each other, and in connection with the conduct hereinafter alleged, and that each of them performed the acts complained of herein or breached the duties herein complained of as agents of each other and each is therefore fully liable for the acts of the others.

29.     As a result, PLAINTIFF is further informed and believes and thereon alleges that the Defendant Companies and the POA were, are, and continue to be the alter ego of the Defendant Members and that an injustice will result if the sham entities of the Defendant Companies and the POA are not disregarded, and the Defendant Members held personally liable for the indebtedness and obligations of the Defendant Companies.

///

///

///

///

///

COMPLAINT FOR DAMAGES

**GENERAL ALLEGATIONS**

30.     PLAINTIFF realleges and incorporates by reference each and every allegation contained within paragraphs 1 through 29, inclusive, as if the same were fully set forth herein.

31.     PLAINTIFF is informed and believes and thereon alleges that in or about 2004, KENNETH formed Palm Desert Masterbuilders, Inc., a California Corporation, whose name, on or about May 18, 2012, was later amended by KENNETH and KIRSTEN with the California Secretary of State to be Ecomaster Corporation, a DEFENDANT in this present matter.  As is set forth above, PLAINTIFF is informed and believes and thereon alleges that ECOMASTER was formed by KENNETH, and at all times relevant herein operated by KENNETH and his respective family members, including without limitation, his wife KIRSTEN, and his children, KATHERINE and MICHAEL, all for their personal benefit. According to ECOMASTER'S website, KENNETH is "*the Class A General Engineering Contractor License Responsible Managing Officer (RMO)*" of ECOMASTER.

32.     PLAINTIFF is informed and believes and thereon alleges that in or about February 2016, KENNETH and WILLIAM discovered approximately 153 acres of vacant land located at East N. Indian Canyon, in the City of Desert Hot Springs, Riverside County, California, that would eventually become the Coachillin Industrial & Canna-Business Park Development (the "Development").

33.     PLAINTIFF is informed and believes and thereon alleges that in or about March 2016, KENNETH and WILLIAM attempted to purchase the land to use for the Development, all while initially using ECOMASTER as the Purchaser to facilitate such transaction.  PLAINTIFF is informed and believes and thereon alleges that this purchase of land for the Development was consummated by the DEFENDANTS shortly thereafter.

///

COMPLAINT FOR DAMAGES

34.    PLAINTIFF is informed and believes and thereon alleges that on or about April 4, 2016, DEFENDANTS KENNETH, WILLIAM, and other members of WILLIAM's family organized DEFENDANT COACHILLIN for the purpose of closing on the purchase of the above-referenced land for the Development, and to also act as the master developer of the Development. It is believed by the PLAINTIFF that promptly following the organization of COACHILLIN, ECOMASTER assigned to COACHILLIN, without consideration, its rights and interests in the land to be used for the Development.

35.    PLAINTIFF is informed and believes and thereon alleges that in or about April 2016, DEFENDANTS KENNETH, WILLIAM, and COACHILLIN entered into an agreement to retain Ms. Paula Turner, a local real estate agent in the Coachella Valley, and her real estate agency, Desert Pacific Properties, to act as its exclusive listing real estate agent, whereby Ms. Turner and/or Desert Pacific Properties was the only real estate agency authorized to represent KENNETH, WILLIAM, and COACHILLIN for the sale of individual parcels of land within the Development.  Ms. Turner and Desert Pacific Properties represents on their website (https://www.desertpacificproperties.com/team/), that "*Since 2015 Desert Pacific Properties, under Paula's leadership, has become a leading source of cannabis real estate with a current inventory of approximately $150 million…*"

36.    In or about the end of 2017, the PLAINTIFF first learned of the Development, which was being planned, developed, and marketed by the DEFENDANTS through their alter ego business entity, COACHILLIN.

37.    PLAINTIFF is informed and believes and thereon alleges that the Development was approved by the City of Desert Hot Springs (the "City") in or about November 2017, as an approximately 153-acre master plan industrial and business park dedicated to the operation of legalized cannabis business.

38.    According to COACHILLIN'S own website, www.coachillin.com (the "Website"), the Development at full buildout was supposed to include "*[M]ore than*

COMPLAINT FOR DAMAGES

*3,000,000 sq. ft. of sustainable cannabis cultivation, manufacturing, processing, laboratory testing, and tours/education facilities*." The Website further stated that the Development was supposed to be "*designed to be a center of excellence & innovation, setting a new standard of sustainability for California's budding cannabis industry*." It was often touted by the DEFENDANTS that the Development was planned to have a restaurant, brewery, dispensary, hotel, private club, bank and cash vault, amphitheater, laboratory, educational center, and on-site cannabis wastewater remediation facility (collectively referred to herein as the "Amenities"), of which were material inducements for the PLAINTIFF in its decision to purchase its parcel of land within the Development, as is set forth herein. According to COACHILLIN's own Website, and the materials, representations, and other information contained therein, such Amenities were supposed to have already been constructed, completed, and opened prior to the initiation of this instant action. Despite the foregoing, as of the date of the filing of this Complaint, the Development is still under construction and not even close to completion, despite a number of promises to the contrary prior to the PLAINTIFF ever purchasing its property within the Development, including repeated representations by the DEFENDANTS that the Development, the respective Amenities, and the entire infrastructure of the Development (e.g. electricity, sewage, and water) would have been long since completed by now.

39.     In her efforts to sell lots at the Development, brochures on Ms. Turner's website related to COACHILLIN represented to potential clients important information such as: (i) "*Get Your Regulatory Permit by Dec. 2017*;" (ii) "***Substantially improved parcels include paved roads, electricity, domestic water, cultivation water well, natural gas and sewer facilities***;" (iii) "*Coachillin Brewery Tap Room **Opening Dec. 2019**;*" (iv) "*Specific Plan eliminates the need for individual Conditional Use Permits (CUP'S)*;" (v) assertions within a parcel map that Lot 43 within the Development is to be used for an "*Interim Waste Facility*;"

and, (vi) that "***Purchase Price includes all utilities to the site***..." (Emphasis added). Despite all such material representations previously made and still presently being made upon Ms. Turner's website, Ms. Turner has known and continues to be informed by and though having acted in concert with the DEFENDANTS COACHILLIN, KENNETH, and WILLIAM, that such material representations are false and misleading.

40.    PLAINTIFF is informed and believes and thereon alleges that the overall buildout and management of the Development as well as the DEFENDANTS' ability and/or right to do so was and continues to be expressly conditioned upon and subject to various agreements, designs, conditions, orders, and/or plans entered into by the DEFENDANTS and approved and/or adopted by the City as well as other governmental agencies.  Specifically, without limitation, PLAINTIFF is informed and believes and thereon alleges that the following agreements, designs, conditions, orders, and/or plans govern the Development and the DEFENDANTS' conduct thereto:

-    Conditional Use Permit 17-17, Tentative Parcel Map 37158, including the Conditions of Approval for the Coachillin' Industrial Cultivation & Ancillary Canna-Business Park, prepared by the City of Desert Hot Springs on or about October 17, 2017 (the "Conditions of Approval");

-    DHS Project Specific Plan #01-17, Approved by City of Desert Hot Springs through Ordinance No. 642 on or about November 7, 2017, and thereafter adopted by the City Council of Desert Hot Springs on November 21, 2017, subject to the DEFENDANTS' written acceptance, which was executed and acknowledged by KENNETH on November 22, 2017, and thereby added as Chapter 17.200 to Title 17 "Zoning" of the City of Desert Hot Springs Municipal Code (the "Specific Plan");

///

///

COMPLAINT FOR DAMAGES

- Final Parcel Map of the Development, Parcel Map No. 37158, recorded with the Riverside County Recorder on December 22, 2017 as Document No. 2017-0537543 (the "Final Parcel Map");

- The Subdivision Improvement Agreement for Parcel Map No. 37158, recorded with the County of Riverside on January 18, 2018, Document No. 2018-0020292 (the "Development Agreement");

- The Amended and Restated Declaration of Covenants, Conditions and Restrictions – Indian Canyon & 18th Property Owners Association, which was made effective as of July 8, 2019 by COACHILLIN, who referred to itself within said Covenants, Conditions and Restrictions as the "Declarant," and such Covenants, Conditions and Restrictions was recorded with the Riverside County Recorder on December 17, 2019 as Document No. 2019-0520996 (the "CC&R's");

- The Design Requirements and Guidelines, which the "Amended" version was approved by Desert Hot Springs' City Council on July 14, 2020 (the "Design Plan"); and

- California Regional Water Quality Control Board ("CRWQCB") Order R7-2020-0029, dated November 12, 2020 (the "CRWQCB Permit").

41.    PLAINTIFF is informed and believes and thereon alleges that for the purposes of this Complaint, relevant portions of the Conditions of Approval include, without limitation, the following requirements and obligations imposed upon the DEFENDANTS:

- Paragraph No. 31 on Page 7 specifically states that the DEFENDANTS "***SHALL maintain*** *the Project Site after the start of construction and until the Project is completed, free of weeds, debris, trash or any other offensive, unhealthy and dangerous material*." (Emphasis Added).

- Paragraph No. 84 on Page 16 specifically states that the DEFENDANTS "***SHALL annex*** *to Community Facilities District No. 2010-1 for the*

21

—————————————————————————————————————
COMPLAINT FOR DAMAGES

maintenance of: (a) Landscape/Hardscape; (b) Streetlights; (c) Drainage Basins / Storm Drainage Facilities..." (Emphasis Added).

- Paragraph No. 93 on Page 17 specifically states that "**_AT NO TIME_**, _shall any adjacent streets for the project be allowed to be used for construction staging, storage, or other such construction related activities._ _Access by heavy equipment_ **_shall be limited_** _to the minimum number of trips essential to completing the construction._" (Emphasis Added).

- Paragraph No. 95 on Page 18 specifically states that the DEFENDANTS "**_SHALL comply_** _with the National Pollution Discharge Elimination System (NPDES) requirements per the California Regional Water Quality Board..._" (Emphasis Added).

- Paragraph No. 98 on Page 18 specifically states that the DEFENDANTS are "**_REQUIRED_** _to construct all transition and missing links between existing and proposed improvements_" (Emphasis Added).

- Paragraph No. 107 on Page 20 specifically states that "_No nuisance water shall escape the site onto public streets_"

- Paragraph No. 115 on Page 21 specifically states that the DEFENDANTS "**_SHALL enter into_** _water and sanitary sewer service agreements with the Mission Springs Water District for domestic water and sanitary sewer service._" (Emphasis Added).

- Paragraph No. 137 on Page 24 specifically states that the DEFENDANTS "**_SHALL provide and install adequate_** _water supply,_ **_sanitary sewer_**, _natural gas,_ **_electric_**, _telephone, and cable television lines_ **_to serve each separate lot._**" (Emphasis Added).

- Paragraph No. 142 on Page 24-25 specifically states that the DEFENDANTS "**_SHALL submit_** _an owner-and contractor-signed PM10 Dust Control Implementation Plan in accordance with the standards and_

codes of the City and the South Coast Air Quality Management District (SCAQMD)..." (Emphasis Added).

- On Page 34, under title of "Septic System" it specifically states that "*Sewer service is currently unavailable in this area. Dry sewers will be required offsite **and onsite**.*"

- Paragraph No. 214 on Page 34 specifically states that "***MSWD requires submittal of proposed plumbing plan showing all connections to the septic system(s) and the size and location of the proposed disposal system(s) for the project.*" (Emphasis Added).

- Paragraph No. 215 on Page 34 specifically states *"**All onsite, temporary septic systems** shall be designed to be easily abated and connected to the dry sewer once the sewer is placed in service. **The developer shall be responsible for all abatement and connection costs.**"* (Emphasis Added).

- Paragraph No. 217 on Page 35 specifically states that "*Dry sewers will be required to be installed within the project site to serve all lots within the subdivision, conforming to Mission Springs Water District Standards.*"

- Paragraph No. 222 on Page 35 specifically states that the DEFENDANTS "***SHALL complete** an application for sewer service with payment of all applicable fees, charges and deposits at the time of application (i.e., multi-family, residential, commercial sewer connection fees per current MSWD fee schedules).*" (Emphasis Added).

- Paragraph No. 225 on Page 35 specifically states that the DEFENDANTS "***Will be required to bond** all infrastructure and be required to supply a warranty bond for the infrastructure. This warranty bond will be released 1 year from the District's acceptance of the infrastructure.*" (Emphasis Added).

42.     PLAINTIFF is informed and believes and thereon alleges that for the purposes of this Complaint, relevant portions of the Specific Plan include, without

limitation, the following requirements and obligations imposed upon the DEFENDANTS:

- Section No. 2 on Page 7 of 131, entitled "<u>Domestic Water and Sewer</u>," which not only sets forth a comprehensive set of requisite developmental standards which needed to be adhered to through the course of constructing the Development but which various permits of the Development are based upon, specifically states, in pertinent part, "*Interim sewer handling will be provided by an engineered septic system approved by the Regional Water Quality Control Board (RWQCB) until MSWD [Mission Springs Water District] builds their new Sewer Plant 0.25 mile east of the proposed project.*" (sic)

- On Page 43 of 131, in the Section entitled "<u>Sewer</u>," such Section specifically states, in pertinent part that, "*The applicant intends to handle all waste created on site with a temporary **onsite** wastewater septic system **located in the Southern portion of the project**.  The septic system will be an "interim use" until such time a MSWD plant is constructed the Project shall install a septic system with a nitrogen element removal element which has been approved by the California Water Board.*" (*sic*) (Emphasis Added).

- On Page 82 of 131, in the Section entitled "<u>Sewer</u>," such Section specifically states, in pertinent part that, "*Based upon the information presented above, the handling of the Project's sewerage treatment and disposal can be handled as follows: **To construct an ON-SITE packaged wastewater treatment plant (WWTP)** to adequately treat the Project sewer flows prior to being disposed of through **on-site** leech lines or seepage pits....It should be noted that the temporary facilities will **NEED to be owned and operated by the developer AT THE DEVELOPER'S**

***EXPENSE, including and future transitional facilities required.***" (*sic*) (Emphasis Added).

- On Page 103 of 131, in the Section entitled "<u>Financing</u>," such Section specifically states, in pertinent part that, "***The developer will construct all on-site***…*improvements including roadway improvements, parks, drainage improvements*…" (Emphasis Added).

43.     PLAINTIFF is informed and believes and thereon alleges that for the purposes of this Complaint, relevant portions of the Development Agreement include, without limitation, the following requirements and obligations imposed upon the DEFENDANTS:

- On Page 1, Recital "A" specifically states that the DEFENDANTS "***SHALL construct*** *the following public improvement ("work") for the above referenced property: streets, curbs, gutters, storm drains, <u>sewer</u>, water, walls, landscaping and any improvements associated with this development*…" (Emphasis Added).

- On Page 1, Paragraph No. 1, entitled "IMPROVEMENTS," specifically states, in pertinent part that, "*For valuable consideration, **DEVELOPER agrees to do, or cause to be done, AT DEVELOPER'S EXPENSE**…all of the work described herein by the date specified….Said work shall be **in strict conformity** with the plans and specifications of the work, the standard specifications and drawings for public improvements adopted by CITY and this agreement.*"  (Emphasis Added).

- On Page 3, Paragraph No. 3, entitled "DEVELOPER'S LIABILITY," specifically states, in pertinent part that, "***DEVELOPER shall, at DEVELOPER'S sole cost and expense, be solely and completely responsible for all matters*** *affecting the design, prosecution, progress and completion of the work (both on and off the job site). DEVELOPER shall be responsible for observing all laws*." (Emphasis added).

COMPLAINT FOR DAMAGES

44.     PLAINTIFF is informed and believes and thereon alleges that for the purposes of this Complaint, relevant portions of the CC&R's include, without limitation, the following requirements and obligations imposed upon the DEFENDANTS:

- On Page 1, Recital E specifically states that "*[T]he Project shall be held, improved and conveyed subject to those certain protective covenants, conditions and restrictions set forth herein in order to create mutually equitable servitudes upon the Site* ***in favor of all*** *Parcels/Buildings/Businesses located therein, creating reciprocal rights and obligations between the respective Parcel Owners and creating privity of contract and estate between Owners pursuant to the California Commercial and Industrial Common Interest Development Act commencing with California Civil Code section 6500*." (Emphasis Added).

- On Page 2 Recital F specifically states that the development of the Project "[S]*hall be subject to this Amended and Restated Declaration of Covenants, Conditions and Restrictions*."

- On Page 2 Recital G specifically states that "*The Specific Plan ("SP") #01-17, and any amendments thereto, along with this Declaration shall continue to govern the use and development of the Project...*"

- Section 2, entitled "PURPOSE OF COVENANTS, CONDITIONS AND RESTRICTIONS" specifically states, in pertinent part that, "*The purpose of these covenants, conditions and restrictions includes, but is not limited to:*

    *2.1     Encouraging and ensuring the proper development and use of the Project;*

///

///

COMPLAINT FOR DAMAGES

2.2     *Protecting Declarant and any Parcel Owner of each Parcel against any improper development and use of adjacent and surrounding Parcels:*

2.3     *Preventing the construction on the Project of structures built of improper design or materials;*

2.4     *Encouraging the construction of attractive improvements at appropriate locations;*

2.7     *Enhancing and protecting the value, desirability, and attractiveness of the entire Project;*

- Within the definition of owner's "**Allocable Share**" of the Common Area Expenses, it states that such share shall be based upon the acreage owned by each lot owner (as the numerator) divided by the total acreage of all parcels (as the denominator). As indicated in Exhibit D to the CC&R's, the Allocable Share for Parcel 28 was 2.11%.

- Within the definition of "**Common Area Expenses**," it is specifically stated that "*Common Area Expenses, as to each Parcel Owner, **shall NOT include** (A) the costs and expenses incurred by Declarant to construct the Initial Common Infrastructure (provided, however, that the costs of initial construction of the perimeter wall surrounding the Project, cultivation water, chilled and hot water and entrance gates to the Project may be charged and assessed to one or more Parcel Owners)...*" (Emphasis Added).

- Within the definition of "**Initial Common Infrastructure**" it is specifically stated that "*the common infrastructure to serve the Project, as more particularly described on Exhibit B, the Map, Exhibit A-2, and in the SP...In the event of a conflict between the SP and the Map or this Declaration, including, without limitation, the exhibits attached hereto, then the SP shall control, but only to the extent of, and with respect to, that*

COMPLAINT FOR DAMAGES

conflict.  As of the date of this Declaration, the Amended Specific Plan has not yet been approved by the City Council.  Notwithstanding anything to the contrary contained in this Declaration, either the Declarant or the Association may, without the consent of any Parcel Owner, execute and record an amendment to this Declaration incorporating the SP into the provisions hereof.*"  Accordingly, pursuant to the language expressly set forth within these CC&R's, COACHILLIN and its ownership, including without limitation, KENNETH and WILLIAM, were definitively required to pay for the cost to build the common infrastructure to serve the Project.  Thus, KENNETH, WILLIAM, COACHILLIN, KATHERINE, KIRSTEN, MICHAEL, and the POA were each required, and continue to be required, to comply with the Specific Plan as it was expressly part of the CC&R's, incorporated by reference therein, and ultimately approved by the City of Desert Hot Springs and codified into the City's Municipal Code.  The failure to comply with the Specific Plan constitutes a violation of the various controlling documents, the CC&R's, and the governmental approvals of the same by the City of Desert Hot Springs and others.

- Section 7.2 specifically states, in pertinent part that, *"[I]f Declarant or any affiliate of Declarant elects to furnish one or more utility service(s) to Parcel Owners, each Parcel Owner will be given the opportunity, **but will NOT be obligated**, to purchase, subscribe, and/or rent the service(s) from such service provider(s).*"  (Emphasis Added)

- Section 7.4 specifically states, in pertinent part, that *"Each Parcel owner shall discharge Domestic Waste Water into the sewage collection system operated and maintained by the Mission Springs Water District, and each Parcel Owner shall be required to collect and discharge Cannabis Cultivation Waste into a private secured collection tank system.  Said*

*Cannabis Waste Water shall then be disposed of in an "off parcel" cannabis disposal collection site.*"

- Section 9.4, entitled "SPECIAL ASSESSMENTS" specifically states, in pertinent part, that "*[S]pecial assessments may be levied by the Association at any time pursuant to this Section 9.4…:*

  *9.4.2  Special Assessments may be levied against all Parcel Owners in accordance with their respective Allocable Shares for the purpose of defraying, in whole or in part:…*

    *9.4.2.2      The cost of bringing utilities or infrastructure (<u>OTHER THAN the Initial Common Infrastructure</u>) to the Common Areas…NO SUCH <u>Special Assessment shall be levied</u> in connection with any original construction of the Initial Common Infrastructure unless said Special Assessment is used for the reconstruction or replacement of any capital improvement included in the Initial Common Infrastructure…*" (Emphasis Added).

- Section 11.1 entitled "DUTIES OF PARCEL OWNER, ASSOCIATION" specifically states, in pertinent part, that the "*Parcel Owner(s) shall not release, generate, use, store, dump, transport, handle, or dispose of any Hazardous Materials within the Project or otherwise permit the presence of any Hazardous Materials on…their respective Parcels…except in accordance with all applicable Law.*"

45.    PLAINTIFF is informed and believes and thereon alleges that for the purposes of this Complaint, relevant portions of the Design Plan include, without limitation, the following requirements and obligations imposed upon the DEFENDANTS:

- Section 11.3 states, in pertinent part that, "*The sanitary sewer system which the COACHILLIN' INDUSTRIAL CULTIVATION & ANCILLARY CANNA-BUSINESS PARK intends to use is a temporary septic at one*

*location, and the proposed Anaerobic Digestion (AD) System, with future hookups to the new Mission Springs Water District's plant."*

46.     PLAINTIFF is informed and believes and thereon alleges that for the purposes of this Complaint, relevant portions of the CRWQCB Permit include, without limitation, the following requirements and obligation imposed upon the DEFENDANTS:

-   The cover page of the CRWQCB Permit specifically states the following: (i) the "Discharger" is Coachillin' Holdings LLC; and (ii) the "Facility" is Coachillin' Business Park **ONSITE** Wastewater Treatment and Disposal System.

-   On Page No. 1, Finding No. 1 specifically states, in pertinent part that, "*Coachillin' Holdings LLC (Discharger)* ***owns and operates*** *the Coachillin' Business Park **Onsite** Wastewater Treatment and Disposal System (Facility).*"  (Emphasis Added).

-   On Page No. 1, Finding No. 2 specifically states, in pertinent part that, "*The Facility is located at North Indian Canyon Drive, between 18th and 19th Avenues, in Desert Hot Springs, California…The Facility location is shown in Attachment A – Vicinity Map, incorporated herein and made a part of the Order by reference.*"

-   On Page No. 2, Finding No. 7 specifically states, in pertinent part that, "*An **ONSITE** wastewater treatment and disposal (OTWS) system will provide wastewater treatment for domestic wastewater generated at the Park.*" (Emphasis added).

47.     As is previously set forth herein, in or about the end of 2017, the PLAINTIFF first learned of the Development.

48.     PLAINTIFF DHS VERDE, LLC is the owner and rights holder over the real property within the Development which is commonly known as "Parcel 28."

COMPLAINT FOR DAMAGES

On or about April 3, 2018, PLAINTIFF DHS VERDE closed on its purchase of its respective parcel of land within the Development.

49.     DHS VERDE is informed and believes and thereon alleges that its members first learned of the Development from Mr. Brad Watson, whom DHS VERDE had a pre-existing relationship with.  At the time of learning about the Development, said members of PLAINTIFF DHS VERDE were already actively seeking to acquire real property within the State of California to conduct legalized cannabis business operations from within.  Upon learning of the Development, said members began to initially research the Development through various means, including online research of the Development via the Website, which contains various representations as to the supposedly intended robust and all-inclusive nature of the Development.

50.     Upon being impressed with their initial review of the Development and the fact that the Development appeared to be an all-inclusive canna-business-based park as was being represented by DEFENDANTS, members of DHS VERDE then sought to schedule a site tour of the Development and in-person meetings with the DEFENDANTS, all to learn more about the potential acquisition and construction of property within the Development, as well as additional information related to the full scope of the Development, the anticipated delivery of the utilities (e.g. electricity, sewer, etc.) and its represented Amenities.

51.     PLAINTIFF DHS VERDE is informed and believes and thereon alleges that in furtherance of their desire to learn more about the Development, members of DHS VERDE and its authorized representatives were able to conduct an in-person site visit of the Development and attend an in-person meeting with the DEFENDANTS.  Specifically, in or about the end of 2017 and continuing through the commencement of  2018, Dan Zaharoni, Kintu Patel, Jayson Quinones, David Moss and Brad Watson, all of whom were authorized representatives of DHS VERDE, attended multiple in-person sales presentation meetings with

COMPLAINT FOR DAMAGES

DEFENDANT KENNETH and other representatives of DEFENDANT COACHILLIN, who presented on behalf of themselves and other DEFENDANTS. During these in-person meetings, DEFENDANTS made several material representations concerning the overall buildout of the Development, construction of the Development's Amenities, infrastructure, and utilities, and the timelines related thereto. Specifically, DEFENDANT KENNETH expressly represented to the aforementioned DHS VERDE representatives that: (i) electrical service for the real property more commonly known as Parcel 28 was to have all such desired electrical service provided to it by no later than Christmas 2018; (ii) the water infrastructure for the entire Development will include a built-in reverse osmosis system to be utilized by each respective parcel for purifying water to be used for the cultivation of cannabis; (iii) the Development will include well-water access, which according to the DEFENDANTS is "bulletproof" so as to ensure that each parcel will have continuous access to an unlimited water source, even in the event of significant drought conditions; and (iv) the Development will feature a restaurant / brewhouse, research facility, dispensary that features parcel owner's products, cannabis-based tourism facility, and a roof-top lounge for smoking.

52.     Due to the condition of the vacant land prior to purchasing Parcel 28 within the Development, the members of PLAINTIFF DHS VERDE were very concerned about various details associated with the Development and its overall construction.   For example, the members of PLAINTIFF DHS VERDE sought specific information and factual representations from the DEFENDANTS about the Development, including, without limitation: (i) the overall ability of the DEFENDANTS to actually develop the Development; (ii) what amount of monies would be needed to complete the Development, and were all DEFENDANTS adequately equipped to finance such development through finalization; (iii) what approvals would be needed to complete the Development; (iv) what was included in the infrastructure - including electricity, sewage, and water; (v) who would be

responsible for paying for the cost of such infrastructure; and (vi) the applicable timeline that the infrastructure would be completed, as well as other related details. All of this information was highly relevant and material to PLAINTIFF DHS VERDE in making its determination whether or not to purchase property within the Development and was also further material to the transaction as the price of a semi-improved lot within the Development was significantly higher than the price of other vacant land in the surrounding area.  As such, these concerns caused the members of PLAINTIFF DHS VERDE to engage in various due diligence efforts.

53.    PLAINTIFF DHS VERDE is informed and believes and thereon alleges that following these meetings between members of PLAINTIFF DHS VERDE and the aforementioned DEFENDANTS, DHS VERDE engaged in additional due diligence efforts concerning its potential purchase of real property within the Development.  Specifically, PLAINTIFF DHS VERDE engaged in efforts to review and analyze all aspects of the purchase of the respective property to be acquired by it.  Such due diligence efforts commenced in or about the start of 2018, and continued thereafter until in or about April 2018, when DHS VERDE actually chose to close on the purchase of Parcel 28 within the Development.  During said interim time-period, DHS VERDE and its authorized representatives requested from the DEFENDANTS all relevant information as to the Development, the parcels for sale within, as well as all agreements, designs, conditions, orders, and/or plans concerning the Development, and the related costs and timelines thereto.   In furtherance of these requests, during this time-period and prior to DHS VERDE's close of its purchase of its respective parcel of land within the Development, DHS VERDE was provided copies of various relevant documents by and/or on behalf of the DEFENDANTS concerning the Development and the DEFENDANTS' purported buildout of the related infrastructure, utilities, and the Amenities. Specifically, the following documents were provided by and/or on behalf of the DEFENDANTS to DHS VERDE, and then DHS VERDE and its representatives

_____

COMPLAINT FOR DAMAGES

were able to engage in the thorough review and analysis of such documents and information in an effort to obtain all material information concerning the Development and DHS VERDE's then potential purchase of a parcel therein:

- Title Reports related to parcels of land within the Development;

- Various Development-related advertisements provided by and/or otherwise on behalf of DEFENDANTS, as well as provided by Ms. Turner/Desert Pacific Properties;

- Various agreements, designs, conditions, orders, and/or plans which govern the buildout of the Development and the DEFENDANTS' requisite conduct relating thereto, all which were provided by or on behalf of the DEFENDANTS to support DHS VERDE's due diligence efforts and requests.  Such documents include, without limitation, the following: (i) the Conditions of Approval; (ii) The Specific Plan; (iii) The Final Parcel Map; (iv) the Development Agreement; (v) the prior Declaration of Covenants, Conditions and Restrictions related to the Development; and (vi) The Project Security Plan;

- The Purchaser Responsibility Breakdown, created and provided by DEFENDANTS, which expressly sets forth all specific financial obligations and responsibilities that DHS VERDE would be responsible for in addition to the purchase price of the land in the Development and buildout of its parcel of land within the Development;

- Seller Vacant Land Questionnaire, dated August 8, 2016, and executed by DEFENDANT KENNETH on behalf of DEFENDANTS;

- ECOMASTER'S sales solicitations, as a general contractor, regarding the potential building and construction of the Development and the parcels therein; and

- Design Requirements and Guidelines for the Development, Dated August 2017, prepared by A& Architects.

54.     PLAINTIFF DHS VERDE is informed and believes and thereon alleges that pursuant to the above referenced documents, the DEFENDANTS were required to construct, implement, and pay for the installation of infrastructure for the Development, including without limitation, infrastructure relating to electricity, water, and sewer.

55.     PLAINTIFF DHS VERDE is informed and believes and thereon alleges that on November 21, 2017, the DEFENDANTS provided all land purchasers a specific document entitled "*Coachillin' Industrial Cultivation & Ancillary Canna-Business Park Update*" (the "11/21/2017 Update").     While PLAINTIFF DHS VERDE was not actively in escrow with the DEFENDANTS at the specific time this update was issued, through DHS VERDE's due diligence requests, the 11/21/2017 Update was provided by the DEFENDANTS to PLAINTIFF DHS VERDE as one of the latest informational updates within the Development in an effort to induce DHS VERDE to purchase property within the Development.  The 11/21/2017 Update specifically states, in pertinent part, that: (i) all of the electrical infrastructure for Parcel 28 will be completed by the end of 2018; (ii) the DEFENDANTS have secured agricultural electricity rates ("ag rates") for parcel owners to utilize, which were represented by DEFENDANTS as far less expensive than typical domestic rates; and (iii) the water and sewer infrastructure of the development will be completed by the DEFENDANTS within sixty (60) days of the date of the 11/21/2017 Update.  As such, the material information set forth within this 11/21/2017 Update appear to comport with those representations made by the DEFENDANTS to the representatives of PLAINTIFF DHS VERDE during their meetings with the DEFENDANTS.

56.     PLAINTIFF DHS VERDE is informed and believes and thereon alleges that in addition to the 11/21/2017 Update, the DEFENDANTS also provided PLAINTIFF DHS VERDE with a copy of an update dated January 9, 2018 entitled "Infrastructure Update and Tentative Scheduling Status" (the "1/09/2018 Update").

COMPLAINT FOR DAMAGES

Pursuant to this 1/09/2018 Update, the DEFENDANTS again expressly represented that the electrical infrastructure for Parcel 28 would be completed by July 2018, and all sewer and water related infrastructure would be fully installed and complete no later than February 2018.  As such, the material information set forth within this 1/09/2018 Update not only comported with those representations made by the DEFENDANTS to the representatives of PLAINTIFF DHS VERDE during their meetings with DEFENDANT KENNETH as well as the continual representations within the above-referenced 11/21/2017 Update, but it actually appeared to advance forward the proffered date that electricity would be available to Parcel 28, which was significantly material to the PLAINTIFF.

57.    PLAINTIFF DHS VERDE is informed and believes and thereon alleges that prior to the purchase of its respective parcel of land within the Development, in addition to the aforementioned due diligence efforts, DHS VERDE and its authorized representatives also engaged in a number of telephonic conversations and exchange of e-mail correspondence with the DEFENDANTS in an effort to obtain absolute clarity and further assurances as to the details of the Development, the promises being made by the DEFENDANTS, and the respective obligations of each applicable party.

58.    PLAINTIFF is informed and believes and thereon alleges that it has recently learned that in or about August 2017, Southern California Edison ("SCE") project manager Barbara Bee (now Barbara Rogan) sent an internal e-mail to her manager about the Development, conceding "*there is a limited amount of reserve left – at approx. 30MW.*"  Ms. Bee advised her manager that SCE could not "*supply a full scope due to the magnitude of the DEFENDANTS' project*."  Ms. Bee explained to her manager that SCE needed to expand a substation to energize the Development and "*without licensing, this will be approximately 3 years to complete*" and, if licensing was needed, SCE was "*looking at about 7 years to complete.*"

COMPLAINT FOR DAMAGES

59.     PLAINTIFF is informed and believes and thereon alleges that it has also recently learned that in or about October 2017, SCE supervisor, Mr. Jeff Goad, sent internal e-mail correspondence to Ms. Bee, advising her that he had already specifically informed DEFENDANT KENNETH of the limited availability of SCE power for the Development.  Additionally, both Mr. Goad and Ms. Bee specifically informed DEFENDANT KENNETH that SCE could not meet and/or otherwise satisfy the DEFENDANTS' electrical power needs at the Development, and that the electrical power needs of the Development would have to be phased in over an elongated period of time.

60.     PLAINTIFF is informed and believes and thereon alleges that it has also recently learned that DEFENDANTS were expressly informed by SCE that it was impossible to determine even the approximate time that each Parcel within the Development would be energized and receive electrical power until a Method of Service ("MOS") was completed by SCE, and that, as of December 2017, SCE had expressly notified the DEFENDANTS that SCE had not even commenced performing the design work for the master conduit, which was a necessary component for the Parcels within the Development to receive electrical power.

61.     PLAINTIFF is informed and believes and thereon alleges that despite the DEFENDANTS being knowledgeable that SCE would not be able to deliver electrical power to the Development for at least three years, DEFENDANT KENNETH, on behalf of himself and other DEFENDANTS, intentionally, yet disingenuously, represented to the PLAINTIFF in December 2017 that electrical power would be delivered to Parcel No. 28 by no later than the end of 2018.

62.     PLAINTIFF is informed and believes and thereon alleges that it has also recently learned that at all relevant times, DEFENDANT KENNETH was knowledgeable of the falsity of his promises to the PLAINTIFF that power would be delivered by the end of 2018, as on or about March 6, 2018, DEFENDANT KENNETH sent e-mail correspondence to SCE acknowledging that "*[W]e still need*

COMPLAINT FOR DAMAGES

*the [MOS] study from SCE and the conduit plan for the project.  If the study comes back with a 2-3 year timeframe for the East ½ of the Project, I want to pursue what it means to be a Direct Access Customer.  I think I can build my own substation in 18 months…*"  Thus, at the time DEFENDANT KENNETH, on behalf of himself and the other DEFENDANTS, made representations to the PLAINTIFF about the delivery of electrical power and the related timing of such, and that it would be purportedly completed by the end of 2018, he actually knew that such representations were false and misleading, as power delivery was, at the very minimum, no less than eighteen (18) months away, which such potential date is no earlier that mid-way through 2019.

63.   PLAINTIFF is informed and believes and thereon alleges that it has also recently learned that SCE did not complete the MOS on the Development until March 8, 2018, approximately one month prior to Plaintiff closing on the purchase of its parcel within the Development.  According to the MOS, the very earliest that PLAINTIFF's parcel could have power was June 2020.  Despite DEFENDANT KENNETH'S and the other DEFENDANTS' knowledge of these material facts, such material information was never conveyed to the PLAINTIFF, and DEFENDANTS never corrected and/or amended their prior representations to the PLAINTIFF as to the time that electrical power would be delivered to Parcel No. 28.

64.   PLAINTIFF is further informed and believes and thereon alleges that even if electrical power was requested by PLAINTIFF from SCE in 2018, that the DEFENDANTS had not constructed and/or otherwise installed the appropriate conduit within the Development until late 2021, and thus, electrical power would not have even been available until at least six (6) months after such time.  To date, despite DEFENDANTS' express representations and promises to PLAINTIFF to the contrary, electrical power has still not been delivered to PLAINTIFF'S Parcel No. 28 within the Development.

COMPLAINT FOR DAMAGES

65.     PLAINTIFF is informed and believes and thereon alleges that in or about February 2018, DEFENDANTS provided to PLAINTIFF DHS VERDE a Purchaser Responsibility Breakdown, which sets forth PLAINTIFF DHS VERDE'S total financial responsibilities, other than the purchase price of the parcel, should it desire to proceed in purchasing its respective parcel within the Development. Specifically, for the purposes of this action, the Purchaser Responsibility Breakdown form, created by the DEFENDANTS and delivered to PLAINTIFF DHS VERDE expressly sets forth the requisite financial obligations of DHS VERDE as relates to utilities, including without limitation, those relating to "*water, sewer, irrigation, fire riser.*"   As to these specific utilities, the DEFENDANTS expressly represented to the PLAINTIFF that the total additional cost to be borne by PLAINTIFF DHS VERDE in conjunction with their purchase of land within the Development was to be $45,000.00.   Additionally, the only other financial obligation delineated to DHS VERDE in this regard for these specific utilities within the Purchaser Responsibility Breakdown expressly stated that DHS VERDE would be responsible for monthly usage bills based upon a usage meter.

66.     PLAINTIFF is informed and believes and thereon alleges that in addition to all of the aforementioned representations made by the DEFENDANTS to DHS VERDE and/or its representatives, DEFENDANTS also made the following express representations to DHS VERDE prior to DHS VERDE'S closing of its purchase of Parcel 28 within the Development:

-   That DEFENDANTS had established beneficial relationships with Southern California Edison (the electricity provider) ("SCE"), Mission Springs Water District, the City of Desert Hot Springs, and the Fire Department responsible for overseeing the Development, which would thereby allow the purchasers of parcels within the Development an advantage over others outside of the Development in that they would be

COMPLAINT FOR DAMAGES

able to more easily navigate, streamline, and obtain requisite permits and approvals;

- Infrastructure for the Development was already well underway and would definitively be fully complete and installed well prior to the time that PLAINTIFF DHS VERDE would be able to develop land improvements upon their individual parcel;

- The DEFENDANTS had already negotiated and secured lower energy/electricity rates, referred to as "agriculture rates" and/or "ag rates," which would benefit parcel owners by significantly lessening the cost of electricity over that which it would otherwise usually be. More specifically, PLAINTIFF DHS VERDE was told by the DEFENDANTS that such savings would amount to an approximate fifty percent (50%) cost reduction when compared to typical domestic power rates; and

- DEFENDANTS acknowledged that the price per square foot of land within the development being charged by the DEFENDANTS was a "premium" when compared to other nearby developments; however, the DEFENDANTS attempted to justify charging such a premium price per square foot by representing that owners of parcels of land within the Development would save substantial sums of monies on electrical rates, costs of infrastructure installation because this was being borne by the DEFENDANTS, and overall operations due to the inclusiveness of the Development and its "one of a kind Amenities," thereby justifying the overall premium price for the property that the DEFENDANTS were seeking.

67.   PLAINTIFF DHS VERDE is informed and believes and thereon alleges that at no time during any of PLAINTIFF DHS VERDE'S efforts to engage in its due diligence review was it ever represented, in any manner whatsoever, to PLAINTIFF DHS VERDE by or on behalf of any of the DEFENDANTS that

PLAINTIFF DHS VERDE would have any responsibility for paying any of the capital expenditures related to the construction, development, and installation of the sewer and/or water infrastructure not located within the boundaries of its own parcel of property within the Development.  Rather, to the contrary, pursuant to various written communications, verbal representations, development related documents, agreements between the DEFENDANTS and various governmental agencies, and the like, as set forth within this Complaint, that DEFENDANT COACHILLIN was expressly and solely responsible for the construction, development, installation, and payment for all sewer and water related infrastructure costs of the Development. Thus, based on these numerous material representations by the DEFENDANTS, it was expressly understood and relied upon by PLAINTIFF DHS VERDE that should it choose to purchase Parcel 28 within the Development, that DHS VERDE would not be required to pay or have any responsibly for payment of any undisclosed monetary amounts related to or for the construction, development, and/or installation of any common infrastructure within the Development, but rather, PLAINTIFF DHS VERDE would be financially responsible solely for the costs of the infrastructure specifically located within their own unique property boundaries, as is also exemplified, in part, by the Purchaser Responsibility Breakdown document created by the DEFENDANTS, as applies to Parcel No. 28.

68.    PLAINTIFF DHS VERDE is informed and believes and thereon alleges that based upon all of the foregoing and in reliance thereto, on or about January 23, 2018, a written *Vacant Land Purchase Agreement and Joint Escrow Instructions* was entered into for the benefit of PLAINTIFF DHS VERDE and agreed upon by KENNETH on behalf of DEFENDANT COACHILLIN (the "Parcel 28 PSA").

69.    PLAINTIFF DHS VERDE is informed and believes and thereon alleges that pursuant to the express terms of the Parcel 28 PSA, PLAINTIFF DHS VERDE agreed to purchase Parcel 28 of the Development for a total purchase price

of One Million Three Hundred Fifty-Two Thousand Five Hundred Thirty-Eight United States Dollars and 00/100 ($1,352,538.00).  Pursuant to the express language of the written Parcel 28 PSA, PLAINTIFF DHS VERDE and DEFENDANTS agreed, in pertinent part:

- *"The lot to be purchased by Buyer…shall have electricity, domestic water, sewer, cable, and gas stubbed in to but not on the site, and a paved road from the main entry and mass graded pad."*

- Seller is to provide the Buyer with a copy of all requisite Bylaws, CC&R's, & Design Guidelines.

- The purchase of the property was *"subject to commercial covenants, conditions and restrictions, a property owners association, [and] shall contain common areas and shall be further subject to a Specific Plan approved by Desert Hot Springs and all applicable laws, rules, regulations of Desert Hot Springs and other governmental entities having jurisdiction thereof."*

- The Seller *"strongly encouraged [the Buyer] to examine a Preliminary Title Report and to review Development Agreement, Bylaws, CC&R's, any easements and public right-of-ways that may affect subject property."*

- Pursuant to Section 9.C. of the Parcel 28 PSA, that no "other costs" not expressly delineated therein would be the responsibility of PLAINTIFF DHS VERDE.  Notably, within said Section, the Seller did not delineate any additional costs that PLAINTIFF DHS VERDE would be responsible for, including without limitation, the payment for any of the Development's common infrastructure and/or other capital expenditures.

- *"In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer of which Buyer is otherwise unaware, Seller shall promptly provide*

*a subsequent or amended disclosure or notice, in writing, covering those items.*"  Notably, in light of the foregoing, no such additional written disclosures or notices were ever provided to PLAINTIFF DHS VERDE by or on behalf of any of the DEFENDANTS.

- "*Seller shall...DISCLOSE KNOWN MATERIAL FACTS...affecting the Property...and make any and all disclosures required by law.*"  Notably, in light of the foregoing, no such additional disclosures were ever provided to PLAINTIFF DHS VERDE by or on behalf of any of the DEFENDANTS.

70.    PLAINTIFF DHS VERDE is informed and believes and thereon alleges that the aforementioned representations were consistent with the other representations made to members of PLAINTIFF DHS VERDE by DEFENDANTS prior to PLAINTIFF DHS VERDE entering into the Lot 28 PSA and closing on the purchase thereto, all as set forth herein.

71.    PLAINTIFF DHS VERDE is informed and believes and thereon alleges that in late 2017, PLAINTIFF DHS VERDE and its representatives, including without limitation, Mr. Dan Zaharoni, Mr. Kintu Patel, Mr. Jayson Quinones, Mr. David Moss and Mr. Brad Watson, conducted an in-person meeting and site tour of the Development with Ms. Turner.   It was during this time with Ms. Turner that she expressly represented to PLAINTIFF DHS VERDE, on behalf of the DEFENDANTS, that the Development was being developed as a full-service cannabis business park that had various lots for sale, and that it had a complete list of infrastructure that it was able to offer purchasers of the property, including without limitation, electrical power, sewer, security, and on-site disposal of cannabis waste.  At no time during this meeting did Ms. Turner ever convey that there were potential issues with the possibility of being able to receive any of the utilities as she was otherwise representing would be available, nor did Ms. Turner mention that

COMPLAINT FOR DAMAGES

1    she was actively engaged in discussions with DEFENDANT KENNETH about

2    these very same issues related to the potential inability of receiving such utilities.

3         72.    Accordingly, given all of the foregoing, PLAINTIFF is informed and

4    believes and thereon alleges that DEFENDANTS, as the developers of the

5    Development, are and were completely and exclusively responsible for all costs

6    associated with the initial common infrastructure and any and all common areas at

7    the Development.  PLAINTIFF DHS VERDE'S sole responsibility was for the

8    costs associated with the infrastructure within its individual lot boundary lines of

9    the property that it purchased, respectively, which has already been paid for by the

10   PLAINTIFF.    Despite the foregoing, DEFENDANTS now seek to hold

11   PLAINTIFF responsible and liable for substantial additional costs and expenses,

12   including those costs and expenses relating to the construction of the initial

13   common infrastructure, costs incurred by COACHILLIN, ENERGY,

14   ECOMASTER, KENNETH, and WILLIAM unrelated to the PLAINTIFF'S lot,

15   and DEFENDANTS are seeking to shift their overall responsibility and obligations,

16   whether financial or otherwise to the PLAINTIFF, all in violation of written

17   agreements, verbal representations, and documents filed with various governmental

18   agencies, amongst others.

19        73.    PLAINTIFF is informed and believes and thereon alleges that

20   DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, KENNETH,

21   WILLIAM, and KATHERINE have engaged in a pattern and practice of despicable

22   conduct whereby they have demanded and continue to demand additional monies

23   to be paid by the PLAINTIFF, which was never agreed upon by the PLAINTIFF,

24   all because DEFENDANT COACHILLIN'S "lender," DEFENDANT WILLIAM,

25   who is also a Managing Member of DEFENDANTS COACHILLIN and

26   ENERGY, was becoming increasingly reluctant to continue funding the

27   Development by approximately mid-2018.

28

74.     PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, KENNETH, KIRSTEN, KATHERINE, WILLIAM, and/or MICHAEL have no rightful authority or legal or factual basis to charge, demand collection of, threaten in an effort to collect, or collect any of these additional monies from the PLAINTIFF that they have been and are continuing to attempt to collect.  Despite the foregoing, DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, KENNETH, KATHERINE, and additional individuals on behalf of such DEFENDANTS have sent impermissible invoices, demand letters, and other correspondence to PLAINTIFF seeking collection of monies that they are not actually entitled to. PLAINTIFF DHS VERDE has notified such DEFENDANTS with respect to these spurious charges and invoices, indicating that PLAINTIFF never had and still has no obligation, whatsoever, to pay them.  However, DEFENDANTS in their typical defiant manner, continue to pursue these baseless charges.

75.     PLAINTIFF is informed and believes and thereon alleges that, as is set forth herein, the foregoing actions by the DEFENDANTS have been made possible as DEFENDANTS COACHILLIN, ENERGY, and ECOMASTER are fully operated, dominated, and controlled by DEFENDANTS KENNETH and WILLIAM.   In addition to KENNETH, he has other family members involved, including his wife DEFENDANT KIRSTEN, his daughter DEFENDANT KATHERINE, and his son DEFENDANT MICHAEL, who all follow DEFENDANT KENNETH'S and DEFENDANT WILLAM'S directives, and consistently use DEFENDANTS COACHILLIN, ENERGY, and ECOMASTER as sham entities to do their bidding and pay for his and each other's obligations, whether financial or otherwise.  This scheme is further complicated by the fact that DEFENDANTS COACHILLIN, KENNETH, KIRSTEN, KATHERINE, and additional individuals on each of their behalves, demand that PLAINTIFF generally pay unlawful markups of fees and costs to DEFENDANT ECOMASTER, as such

COMPLAINT FOR DAMAGES

causes significant issues as relates to conflicts of interest, self-dealing, commingling, and alter-ego as relates to DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL.

76. Coincidentally, the address for DEFENDANT COACHILLIN is 71-713 Highway 111, Rancho Mirage, CA 92270. This is the exact same address utilized for DEFENDANTS ENERGY and ECOMASTER. Accordingly, DEFENDANTS COACHILLIN, KENNETH, and WILLIAM have utilized each other and each of the entities as a mechanism to unlawfully collect additional funds from the PLAINTIFF, as despite representations to the contrary by the DEFENDANTS, the Development was woefully underfunded compared to what was actually needed by the DEFENDANTS to fulfill all of the promises and representations that they made in order to sell property at the Development. The DEFENDANTS have used and continue to use PLAINTIFF'S monies improperly and for their own personal and financial gain, all while shirking their responsibilities to the PLAINTIFF, to company governance to the Defendant Companies, as each and every one of the DEFENDANTS are part and parcel of the partnership, agency, conspiracy, and criminal enterprise with each other to unlawfully squeeze PLAINTIFF and other lot owners out of money to the benefit of the DEFENDANTS, and each of them.

77. Following the closing of the purchase of the PLAINTIFF'S respective parcel within the Development, PLAINTIFF DHS VERDE engaged in significant efforts and expended significant monies to build out and construct various land improvements upon and within its respective parcel. For the purposes of this action, such various improvements include without limitation, the sewage-related infrastructure components that needed to be constructed within the PLAINTIFF'S respective parcel boundary lines, which upon construction have each been connected to the Development's common/main infrastructure by the

COMPLAINT FOR DAMAGES

DEFENDANTS via each parcels' respective utility stub-ins.  Specifically, when installing, constructing, and/or connecting such infrastructure-related improvements, PLAINTIFF retained the contracting services of their own independent contractor, who thereafter provided and/or facilitated all such applicable services.  Notably, because PLAINTIFF chose not to use and/or otherwise retain the services of ECOMASTER to facilitate such construction efforts, DEFENDANTS KENNETH and ECOMASTER forced PLAINTIFF into paying the DEDENDANTS no less than Twenty-Five Thousand Dollars ($25,000.00) to re-review the plans that had already been vetted by the PLAINTIFF'S own licensed contractor, despite such endeavor being completely unnecessary.

78.    As is already set forth herein, PLAINTIFF is informed and believes and thereon alleges that in furtherance of the PLAINTIFF'S purchase of its parcel of land within the Development, it was specifically represented and promised by the DEFENDANTS that DEFENDANT COACHILLIN would be fully responsible for providing and paying for the development, construction, and installation of an **onsite, interim septic sewage system** to be utilized by each of the parcel owners within the Development for the disposal of their respective domestic waste until such time that Mission Springs Water District ("MSWD") – the local public water and sewage utility provider, was able to come online with a permanent sewage solution for the Development.

79.    PLAINTIFF is informed and believes and thereon alleges that despite all of the above-referenced specific representations and promises being made by the DEFENDANTS to the PLAINTIFF prior to the purchase of their respective parcel of land within the Development, all of which were material representations which induced the PLAINTIFF to purchase its respective parcel of land, to date, the DEFENDANTS have not only failed to construct and/or otherwise provide access to any such **onsite, interim septic sewage system**, but rather, PLAINTIFF is

informed and believes and thereon alleges that the DEFENDANTS have even confirmed both verbally and in writing that the DEFENDANTS did not and hereinafter do not even intend on constructing such **onsite, interim septic sewage system** to service the Development.  Specifically, PLAINTIFF is informed and believes and thereon alleges that DEFENDANT KENNETH, on behalf of himself and other DEFENDANTS, as expressly represented to other lot owners, in writing, that "*Coachillin WILL NOT be providing an onsite interim solution…*"

80.     PLAINTIFF is informed and believes and thereon alleges that in or about October 27, 2021, DAVID LEE, on behalf of DEFENDANTS, sent to PLAINTIFF a proposed *Offsite Wastewater Treatment & Disposal Connection Agreement*, which was in the name of one of its alter-egos, DEFENDANT ENERGY (the "Offsite Sewage Agreement").  Pursuant to the express terms and representations set forth within said Offsite Sewage Agreement, the DEFENDANTS attempted to represent to the PLAINTIFF that DEFENDANT ENERGY *"currently operates and maintains an **Offsite** Wastewater Treatment and Disposal System (OWTDS) adjacent to the Coachillin' Business Park (the "Park"). The OWTDS is **authorized and permitted** by the California Regional Water Quality Control Board, Colorado River Basin Region (Regional Board) by Order R7-2020-0029, WDID 7A331366001…"*  Moreover, pursuant to such Offsite Sewage Agreement, the DEFENDANTS are attempting to cause the PLAINTIFF to agree to pay to DEFENDANT ENGERGY an additional amount of $104,180.00, which comprises of an unsubstantiated "connection fee" in the amount of $84,180.00 as well as an additional unreasonable and baseless $20,000.00 "security deposit." Coincidentally enough, as is delineated in Paragraph Nos. 132-136 of this Complaint, DEFENDANTS have received the 4/25/2022 Notice of Violation which, in part, delineates that DEFENDANTS have violated Order R7-2020-0029 by, amongst other things, attempting to build the OWTDS in a location that was never authorized under such Order.

81.     PLAINTIFF is informed and believes and thereon alleges that within the Offsite Sewage Agreement, not only does DEFENDANT ENERGY attempt to charge the PLAINTIFF the aforementioned monetary amounts for additional connection fees for sewage lines that the DEFENDANTS have already been paid for and have already been connected, but this Offsite Sewage Agreement attempts to strongarm PLAINTIFF into granting the DEFENDANTS a variety of easements and other property rights over the PLAINTIFF'S parcel of land, which were never disclosed and/or otherwise previously contemplated or agreed to by the PLAINTIFF.  Moreover, such Offsite Sewage Agreement does not even attempt to disclose what the actual usage fees are to be charged to the PLAINTIFF or any other property owner within the Development, should they ever be willing to enter into such egregious Offsite Sewage Agreement.  In furtherance of such, PLAINTIFF and other similarly situated property owners have even requested, on a number of occasions, specific information related to the actual ongoing usage fees that DEFENDANT ENERGY intends to charge the PLAINTIFF, should the PLAINTIFF ever agree to such Offsite Sewage Agreement.  Despite such efforts by the PLAINTIFF, the DEFENDANTS have absolutely refused to provide the PLAINTIFF or any other similarly situated property owners within the Development with any such requested information.  Instead, DEFENDANTS have recently informed parcel owners within the Development that the DEFENDANTS intend to charge, on a monthly basis, approximately $65,094.00, which consists of charges for the DEFENDANTS' "Labor," "Fuel," "Maintenance," "Permits," and "Compliance and Reporting," all of which were never previously disclosed to and/or agreed upon by the PLAINTIFF and the respective DEFENDANTS.   Moreover, the purported monthly charge of $65,094.00 was identified only as an "estimate," so PLAINTIFF remains completely unaware of what any actual usage rates for use of the sewage system would be.  Furthermore, not only does such purported monthly fees significantly exceed the total applicable fees set forth within PLAINTIFF'S

COMPLAINT FOR DAMAGES

Purchaser Responsibility Breakdown, but such purported monthly fees are not even related to "metered use" of an onsite interim septic system, which is what the PLAINTIFF was ready and willing to use.  As such, the DEFENDANTS have and continue to demand that the PLAINTIFF foregoes significant land rights, and enter into the Offsite Sewage Agreement, despite DEFENDANTS failing to provide it with any actual usage rates, thereby effectively causing PLAINTIFF to sign a "blank check" over to the DEFENDANTS.

82.   PLAINTIFF is informed and believes and thereon alleges that such Offsite Wastewater Treatment and Disposal System, which according to the DEFENDANTS, is owned and operated by DEFENDANT ENERGY, is the sole and only sewage treatment and disposal system which has been constructed by any of the DEFENDANTS to service the Development.   Thus, not only has DEFENDANT COACHILLIN failed to install and/or otherwise provide even a single sewage treatment system for the Development as it was contractually required to do, but the DEFENDANTS now are attempting to force and coerce the PLAINTIFF into utilizing DEFENDANT ENERGY'S sole "offsite" sewage treatment system, which directly contradicts those material representations made by the DEFENDANTS to the PLAINTIFF when inducing the PLAINTIFF to purchase its parcel of land within the Development, as is set forth herein, as well as those construction and development requirements imposed upon the DEFENDANTS, as are set forth within the Development-related documents, which are also set forth herein.

83.   PLAINTIFF is informed and believes and thereon alleges that due to DEFENDANT COACHILLIN'S complete failure to ever provide any type of sewage treatment system for the Development, whatsoever, the DEFENDANTS have now intentionally created a scenario whereby the PLAINTIFF is either forced to agree to DEFENDANT ENERGY'S "take it or leave it" egregious Offsite Sewage Agreement and related costs, or are left without any viable sewage option,

as was otherwise contracted for by the PLAINTIFF when purchasing its Parcel within the Development.

84.     PLAINTIFF is informed and believes and thereon alleges that the DEFENDANTS are attempting to force the PLAINTIFF to use the DEFENDANTS offsite sewage system and pay all such extraordinary fees and costs required therewith in an effort to cause the PLAINTIFF to reimburse the DEFENDANTS for costs previously expended by them in the development, construction, and installation of the common infrastructure within the Development, despite the above referenced documents and other representations mandating that the DEFENDANTS be solely liable for all such common infrastructure costs.

85.     PLAINTIFF is informed and believes and thereon alleges that during a recent telephonic meeting of the POA on February 8, 2022, that DEFENDANT KENNETH expressly asserted that if the parcel owners will not agree to use the offsite sewage system and pay the egregious fees that are being demanded by DEFENDANTS, that the DEFENDANTS will still obtain monies from other parcel owners, including the PLAINTIFF, through other means including, without limitation, special assessments.

86.     PLAINTIFF is informed and believes and thereon alleges that the DEFENDANTS are acting exactly like a public utility through their actions, despite attempting to disingenuously represent and assert within the Offsite Sewage Agreement that they are "*not a public or private utility*," all in a rather apparent effort to avoid the requirements imposed upon utility companies through applicable California law.

87.     PLAINTIFF is informed and believes and thereon alleges that the Offsite Wastewater Treatment and Disposal System, which is being operated by DEFENDANT ENERGY, and being forced upon the PLAINTIFF despite DEFENDANT COACHILLIN never providing the requisite interim onsite septic sewage system, is not even properly and fully permitted by all necessary

COMPLAINT FOR DAMAGES

governmental agencies, and thus, cannot even be legally operated by any of the DEFENDANTS as they are otherwise doing.

88.     PLAINTIFF is informed and believes and thereon alleges that pursuant to the terms of the Offsite Sewage Agreement, said Offsite Wastewater Treatment and Disposal System was supposedly developed, constructed, and installed by DEFENDANT ENERGY pursuant to CRWQCB Order No. R7-2020-0029.  For the purposes of this action, as is set forth above, despite DEFENDANT COACHILLIN being the actual Permit Holder with the CRWQCB for an "onsite wastewater treatment and disposal system" under CRWQCB Order No. R7-2020-0029 (even though DEFENDANT COACHILLIN never built any onsite system in accordance with said Permit), DEFENDANT ENERGY has since intentionally, disingenuously, and continuously misrepresented to the PLAINTIFF, in writing, that DEFENDANT ENERGY (and not DEFENDANT COACHILLIN) is actually the current holder of the Permit with the CRWQCB and that such Permit is now somehow for an "offsite wastewater treatment and disposal system" under the very same CRWQCB Order No. R7-2020-0029.  Despite the foregoing misrepresentations being made by the DEFENDANTS, PLAINTIFF is informed and believes, and on that basis, alleges that to date, no such Permit under CRWQCB Order No. R7-2020-0029 has ever been issued to any of the DEFENDANTS for an "offsite" system, nor has ENERGY ever been issued any permit or order by the CRWQCB, nor have any of the DEFENDANTS been issued any permit which would allow any of them the right to construct and/or operate their "offsite sewage system" in its present location, which is apparently upon land that is not even owned by any of the DEFENDANTS. PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS have engaged in the aforementioned actions and tactics all so that the DEFENDANTS could reap significant additional monetary benefits that they were not otherwise entitled to, all to the PLAINTIFF'S significant detriment.

///

COMPLAINT FOR DAMAGES

89.     PLAINTIFF is informed and believes and thereon alleges that in furtherance of the above-referenced material misrepresentations being made by the DEFENDANTS as relating to the construction of an onsite interim sewage septic system that was to be provided for the parcel owners' use, including that of the PLAINTIFF, DEFENDANTS COACHILLIN, KENNETH, KIRSTEN, KATHERINE, and MICHAEL made various additional representations, as is set forth within this Complaint, not only to the PLAINTIFF, but also to the City, MSWD, and the California Regional Water Quality Control Board ("CRWQCB"), as to the construction of the Development and the related onsite interim septic system, costs to be borne by the DEFENDANTS, infrastructure work within and related to the Development, and other costs related thereto.  Such representations were not only discussed time and time again between the respective parties, but they were also codified within various documents pertaining to the approved construction efforts of the Development which were filed and recorded with the City of Desert Hot Springs, County of Riverside, and the CRWQCB, all which have previously been set forth within this Complaint.

90.     PLAINTIFF is informed and believes and thereon alleges that as is aptly demonstrated by and through the excerpts from the above-referenced documents, the Development was and continues to be required to have an **ONSITE** "interim septic system" provided by, operated by, and paid for by DEFENDANT COACHILLIN for use by the PLAINTIFF and all of the parcel owners within the Development, until such time that MSWD's permanent sewage treatment plant was able to come online and service the Development.

91.     PLAINTIFF is informed and believes and thereon alleges that despite all of the above-referenced requirements being imposed, to date, **NO ONSITE INTERIM SEPTIC SYSTEM HAS EVER BEEN BUILT**, nor has construction ever even began on any such onsite sewage system, despite significant

COMPLAINT FOR DAMAGES

representations by DEFENDANTS COACHILLIN, KENNETH, KATHERINE, KIRSTEN, and MICHAEL to the contrary.

92.     PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS COACHILLIN, KENNETH, KIRSTEN, KATHERINE, and MICHAEL have previously expressly misrepresented to both Officials of the City as well as to MSWD that the parcel owners within the Development, including the PLAINTIFF, actually desired a "privatized sewage treatment facility" to service the Development, and thus, no longer desired MSWD to engage in any further actions to provide its public utility services, all of which is patently untrue and a grave misrepresentation of the parcel owners' actual desires.  A material inducement to the PLAINTIFF purchasing its parcel of land within the Development was that all domestic water and sewage provisions ultimately be provided to the PLAINTIFF by MSWD, which was and still remains the case to this day, despite DEFENDANTS' intentional attempts to deceive the City and MSWD to believe otherwise.

93.     PLAINTIFF is informed and believes and thereon alleges that throughout the pendency of the aforementioned actions, DEFENDANTS KENNETH and WILLIAM, on behalf of themselves and all other DEFENDANTS, consistently worked with each other to conspire, scheme, and devise a plan to unlawfully cause the PLAINTIFF to ultimately be financially responsible for the capital expenditures related to the common infrastructure of the Development that the DEFENDANTS were otherwise legally and contractually responsible for, as is set forth herein.

94.     PLAINTIFF is informed and believes and thereon alleges that in summation as to the sewage infrastructure that was to be developed, constructed, installed, and paid for by the DEFENDANTS, instead of building an onsite interim septic system as was continually promised to the PLAINTIFF and all of the property owners within the Development, all of which was a material inducement for the PLAINTIFF to purchase its respective parcel of land within the Development, as

COMPLAINT FOR DAMAGES

well as to the City, MSWD, and the CRWQCB each approving the DEFENDANTS' respective permits, plans, orders, agreements, and/or the like, DEFENDANTS COACHILLIN, ENERGY, KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL each believed they could unilaterally violate their permits, breach their contracts, and create a privatized, for-profit offsite sewage system, all while completely shirking their contractual, legal, and financial obligation to provide an onsite interim septic system.    As a result, DEFENDANTS COACHILLIN, ENERGY, KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL have now attempted to build a <u>permanent but non-permitted **off-site** septic system</u>, on land which is not even owned by DEFENDANT COACHILLIN, but is apparently upon land currently owned by one of DEFENDANT WILLIAM'S other business entities, whereby DEFENDANTS COACHILLIN, ENERGY, KENNETH, WILLIAM, KATHERINE, KIRSTEN, MICHAEL, and their respective representatives are now demanding and threatening all of the current parcel owners, including the PLAINTIFF, to utilize such off-site system, all while trying to force each parcel owner, including the PLAINTIFF into entering into an egregious adhesion Offsite Sewage Agreement for the use of such off-site septic system while also refusing to provide any of the current parcel owners with the requisite information relating to the potential pricing and/or costs to be charged for their applicable metered use.    Moreover, due to the fact that the DEFENDANTS never actually constructed an onsite septic / sewage system which could be utilized by the PLAINTIFF, DEFENDANTS have now engaged in various "strong-arm" tactics in an effort to threaten and force the PLAINTIFF into using the only sewage system currently available, which is DEFENDANTS for-profit, offsite, unpermitted sewage system.        Thus, despite all of the written obligations, promises, and representations of the DEFENDANTS, as are set forth herein and all of which induced the PLAINTIFF to purchase its parcel of land in the Development and was a material basis for the City's approval of the Development as well as the

CRWQCB's issuance of the Permit, the DEFENDANTS' present position, as conveyed in writing by DEFENDANT KENNETH to another parcel owner within the Development makes it readily apparent, neither he nor any of the DEFENDANTS intended to, nor ever will, adhere to those obligations and promises and actually facilitate any interim onsite septic sewage system within the Development.

95. PLAINTIFF is informed and believes and thereon alleges that from July 28, 2016 to January 9, 2018, DEFENDANTS created and distributed numerous "project updates" in which the progress of the construction infrastructure and other issues of the Development were addressed. While these updates included representations as to when specific aspects of the Development's infrastructure and Amenities would be completed, for the purpose of this action, it is notable that these updates failed to disclose that the Development's infrastructure, including without limitation that which pertains to electricity, sewage, and water, would not and could not be completed anywhere close to the timelines that were previously expressly represented to the PLAINTIFF, both verbally and in writing. Moreover, at no point in any of these updates did the DEFENDANTS ever inform the PLAINTIFF of the DEFENDANTS' intention to require the PLAINTIFF to pay for any of the Development's infrastructure projects. At no point in any of these updates did DEFENDANTS ever inform the PLAINTIFF that there were unforeseen additional costs and expenses that the DEFENDANTS were going to attempt to burden-shift to the PLAINTIFF and thereafter require to be paid by the PLAINTIFF.

96. Despite the PLANTIFF'S understanding that its parcel of land would be improved with utilities stubbed-in, including without limitation, the sewage lines and electricity, DEFENDANTS have completely failed to adhere to such obligations, and DEFENDANTS COACHILLIN, ENERGY, KENNETH, WILLIAM, ECOMASTER, KIRSTEN, KATHERINE, and MICHAEL have schemed to create a system where they can unilaterally threaten and force the

COMPLAINT FOR DAMAGES

PLAINTIFF in an attempt to recover the monies the DEFENDANTS themselves were legally obligated to dedicate to and spend on the development of a sewage system, other utilities, and/or Amenities that were and continue to need to be part of the Development.  Unfortunately for the PLAINTIFF and other parcel owners within the Development, the DEFENDANTS have not only failed to fulfill these obligations, but rather, have disingenuously, unlawfully, and deceptively attempted to now shift these burdens to the PLAINTIFF and other lot owners within the Development.

97.    PLAINTIFF is informed and believes and thereon alleges that upon the DEFENDANTS completion of the development, construction, and installation of the common areas of the Development, DEFENDANTS are required to transfer and assign all rights, title, and interest thereto to the POA, at which time the POA would then assume the obligation for the maintenance and upkeep thereof.

98.    PLAINTIFF is informed and believes and thereon alleges that in or about November 2021, DEFENDANTS KENNETH, KATHERINE, KIRSTEN, MICHAEL, and WILLIAM commenced its attempts to unilaterally cause DEFENDANT POA to amend its present CC&R's, which otherwise govern the rights and interests of the property owners within the Development, to the primary benefit of the DEFENDANTS and to the extreme detriment of the property owners within the Development, including the PLAINTIFF.  Specifically, the DEFENDANTS have unilaterally attempted to amend the present CC&R's in an effort to: (i) cause and/or otherwise allow DEFENDANT COACHILLIN to unlawfully gain additional control over the Development and the POA by attempting to implement a "water mutual," whereby the parcel owners would be allocated one vote per parcel owned, which would otherwise usurp the presently held rights of the other parcel owners; (ii) cause and/or otherwise allow DEFENDANT COACHILLIN to negate its prior contractual obligations owed to each parcel owner, the City, and MSWD with respect to the utilities and related

COMPLAINT FOR DAMAGES

infrastructure, as such contractual obligations are already delineated within this Complaint, as well as those obligations imposed upon COACHILLIN pursuant to the various above-refenced Development-related permits, orders, agreements, and documents; and (iii) now attempt to recapture and/or otherwise be reimbursed by all such property owners the entirety of all such monies that the DEFENDANTS previously expended in an effort to develop, construct, and install such common infrastructure within the Development (including "*the cost of acquisition, construction and maintenance of the assets through the collection of connection fees and assessments.  The "cost of construction and maintenance" of the assets by the Declarant shall include the actual cost of design, permitting and construction of the assets, including Declarant's financing and carrying costs for the assets*"), which was and continues to be the DEFENDANTS' sole and absolute responsibility, whether financial or otherwise, as well as an additional substantial ten percent (10%) "markup" to cover the DEFENDANTS "*administrative costs and the costs of construction management*."    All such aforementioned costs and markups were never agreed to be paid and/or reimbursed by the PLAINTIFF, and in fact, such efforts by the DEFENDANTS are in direct contradiction to those promises, representations, and contractual obligations that exist between the parties.

99.    PLAINTIFF is informed and believes and thereon alleges that in addition to the aforementioned despicable actions of the DEFENDANTS, through the DEFENDANTS' unilaterally attempted amendments to the CC&R's, the DEFENDANTS are also seeking to negate the DEFENDANTS' obligation to assign and transfer all rights and interests of the water and sewage infrastructure within the Development to MSWD, all in a rather apparent concerted effort to cause each of the property owners, including the PLAINTIFF, to be forced into using the DEFENDANTS' privatized, yet inferior, offsite sewage treatment system, all so the DEFENDANTS can reap significant additional financial benefits, to the extreme detriment of the PLAINTIFF.

100.   PLAINTIFF is informed and believes and thereon alleges that due, in part, to the undeniable conflicts of interest, which were brought to the attention of the DEFENDANTS and all other parcel owners with respect to the proposed amendment to the CC&R's, on or about December 22, 2021, the PLAINTIFF, as well as various other property owners, had each vehemently objected to the DEFENDANTS' unilateral efforts to amend the CC&R's and create a water mutual. In furtherance of these objections, nearly every other parcel owner within the Development, with the exception of the DEFENDANTS, fully concurred with such objections and opposed DEFENDANTS' unilateral efforts to: (i) form a water mutual; (ii) amend the CC&R's; and (iii) vote on such topic due to the DEFENDANTS' inherent conflicts of interest due to self-dealing and their financial benefit as a result of such amendment.  Additionally, a number of those responding to the DEFENDANTS' efforts to amend the CC&R's also inquired whether such unilateral amendments to the CC&R's had been drafted and approved by legal counsel for the POA, and if so, if such legal counsel had ever been made aware that such amendment would effectively negate a significant number of the DEFENDANTS' contractual obligations to the property owners, the City, and MSWD, all to the significant benefit of the DEFENDANTS and the extreme detriment of the property owners, including without limitation, the PLAINTIFF.

101.   PLAINTIFF is informed and believes and thereon alleges that in response to such objections being made by the property owners, not only did the DEFENDANTS first attempt to defame the property owners making such objections, but they also had the audacity to unilaterally assert that their extremely beneficial and undeniable financial interest in unilaterally seeking such amendment to the CC&R's, despite all other property owners strenuously objecting to such amendment and formation of an unwanted water mutual, somehow did not constitute either self-dealing or a conflict of interest, and that the DEFENDANTS would continue pushing the amendment forward, as they so desired.

COMPLAINT FOR DAMAGES

102. PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL have and continue to use the POA as their own private enforcement arm of the Development, continually disregarding not only the rights of the property owners within the Development, but any formal procedure as otherwise required by the operative CC&R's, all to the benefit of themselves and DEFENDANTS COACHILLIN, ECOMASTER, and ENERGY.   For example, PLAINTIFF is informed and believes and thereon alleges that the DEFENDANTS, by and through the POA:

- Unilaterally attempted to assess Special Assessments upon "active" and/or "developed" parcels within the Development in an amount which is significantly greater than and disproportionate to those charges and/or assessments that may be levied upon the "non-active" and/or "non-developed" parcels within the Development, all to the extreme detriment of the PLAINTIFF and to the significant advantage of the DEFENDANTS, as most "non-developed" and "non-active" parcels of land within the Development are primarily owned by the DEFENDANTS;

- Impermissibly and unilaterally barred and prevented PLAINTIFF DHS VERDE'S contractor, Mr. Brad Watson, from having any access to the Development and/or PLAINTIFF DHS VERDE'S parcel of land within the Development, leaving PLAINTIFF DHS VERDE without a contractor to further develop its parcel of land while then under construction, simply because Mr. Watson did not personally agree with DEFENDANT KENNETH concerning his construction-related requirements.

- Unilaterally attempted to assess Special Assessments to each of the parcel owners, that were never approved by the Board of the POA,

60

COMPLAINT FOR DAMAGES

including without limitation, those assessments relating to costs incurred by the DEFENDANTS for dust mitigation measures within the Development;

- Unilaterally attempted to assess Special Assessments to each of the parcel owners that were never approved by the Board of the POA for costs relating to guard post cameras, which third-party Coachillin Technology, LLC, also charges the parcel owners for the use thereof;

- Unilaterally attempted to assess Special Assessments to parcel owners in a retaliatory manner against those who denied the DEFENDANTS additional easement and property rights over their respective parcels that were never approved by the Board of the POA;

- Unilaterally attempted, without any approval of the Board of the POA, to charge the POA to pay for Common Area Maintenance fees, despite the DEFENDANTS refusing to dedicate all such common areas to the POA;

- Unilaterally entered into service and/or management agreements, without first sending out for bid and without any approval of the Board of the POA, with third-party vendors, whereby such transactions had a direct financial benefit to the DEFENDANTS;

- Unilaterally attempting to form and force upon each of the property owners a water mutual, which usurps and negates the previously agreed to transfer of the water and sewage system to MSWD, which thereby creates a privatized infrastructure  system which will be solely controlled and operated by the DEFENDANTS;

- Unilaterally retains DEFENDANT ECOMASTER to provide contracting and management services within the Development, all without soliciting other third-party bids for the work, and continually

61

allowing either ECOMASTER and/or DEFENDANT COACHILLIN to charge their ubiquitous "mark-up" on all such fees;

- Unilaterally attempting to control the funds of the POA, and in part, unlawfully using such funds to pay for the personal legal services of DEFENDANTS KENNETH and WILLIAM;

- Unilaterally agreeing to resolve and settle debts of DEFENDANTS WILLIAM, KENNETH, and the POA without any approval of the Board of the POA, all while improperly using the POA'S funds to do so, thereby depleting the POA of adequate funds, and thus unilaterally causing the POA to have to take unfavorable and "non-negotiable" loans from the DEFENDANTS, in a further attempt to financially benefit the DEFENDANTS, while at the concurrent detriment of the other property owners within the Development, including the PLAINTIFF;

- Unilaterally entered into agreements with legal counsel to purportedly represent the POA's interest, all without any approval of the Board of the POA;

- DEFENDANT KENNETH has engaged in acts to threaten physical violence upon parcel owners and their designated representatives, including other members of the Board of the POA.   Coincidentally, when such acts have been reported in writing to the counsel retained by the DEFENDANTS purportedly to the benefit of the POA, all such issues have been repeatedly ignored and/or "swept under the rug" in an effort to protect the DEFENDANTS and to the detriment of the integrity of the POA;

- Unilaterally retaining employees of the other DEFENDANTS to purportedly maintain the records of the POA, including without

COMPLAINT FOR DAMAGES

1    limitation, financial records, all without any independent oversight

2    and/or auditing capabilities;

3    -    In blatant disregard of procedure or proper formality of the Bylaws of

4    the POA, DEFENDANT KENNETH often refers to his purported

5    authority as he "is the Board" and that he has no necessity or

6    requirement to seek the approval of others (i.e., The Board) when

7    attempting to make decisions on behalf of the POA, all while

8    simultaneously benefitting himself and the other DEFENDANTS;

9    -    Consistently comingling the interests of the POA with DEFENDANTS

10    own self interests.

11    103.   As is set forth and is established herein, PLAINTIFF is informed and

12    believes and thereon alleges that prior to entering into its PSA with the

13    DEFENDANTS, and closing upon the purchase and sale of its respective parcel of

14    land within the Development, the DEFENDANTS made various written and oral

15    express representations to the Plaintiff concerning the development, construction,

16    and implementation of the electrical infrastructure, including timelines and the

17    parties' requisite responsibilities and obligations relating thereto.  For example,

18    prior to the PLAINTIFF entering into its respective PSA as well as closing upon its

19    purchase of its parcel of land within the Development, it was expressly represented

20    by the DEFENDANTS to the PLAINTIFF that its parcel of land would have access

21    to and would be able to use as much electricity as the PLAINTIFF desired by no

22    later than a certain point in time.   Specifically, as is set forth above, the

23    representatives of PLAINTIFF DHS VERDE were expressly informed, time and

24    time again, that electrical power would be available at their specific parcel by no

25    later than the end of 2018.  At all times, the DEFENDANTS expressly represented

26    to the PLAINTIFF that SCE supposedly had a "duty to deliver" the power to the

27    Development upon the DEFENDANTS' demand.  Despite all such representations

28    to the PLAINTIFF, which were significantly material and inducing to the

COMPLAINT FOR DAMAGES

PLAINTIFF in making its decision to purchase its parcel of land within the Development, electrical power has **STILL NOT** been delivered to PLAINTIFF'S Parcel, Parcel No. 28.

104.   PLAINTIFF has recently been informed and believes and thereon alleges that on or about June 13, 2017, DEFENDANT MICHAEL, on behalf of himself and other DEFENDANTS sent an e-mail to the California Department of Food and Agriculture regarding proposed cannabis-related regulations.   Copied on this e-mail was DEFENDANTS KENNETH and KATHERINE.   Within such e-mail, DEFENDANT MICHAEL expressly states: "*In summary, if your proposals are passed then our project will be severely reduced and delayed as **the utility has ALREADY forecast that they can't address our demand for power for at least 5 years***." (Emphasis added).  As such, DEFENDANTS all had intricate knowledge of and were well aware that SCE would not be able to meet the power demands of the Development for at least five (5) years, as was expressly asserted by MICHAEL to the Department of Food and Agriculture; however, all such information has always been intentionally concealed, withheld, and/or otherwise kept secret by the DEFENDANTS from the PLAINTIFF, including the time PLAINTIFF DHS VERDE purchased its property within the Development.

105.   PLAINTIFF is recently informed and believes and thereon alleges that on or about October 13, 2017, SCE held a meeting to address various electrical power demands being made within the Coachella Valley, where the Development was located.  PLAINTIFF is informed and believes and thereon alleges that this meeting was attended by DEFENDANTS and their exclusive listing agent, Ms. Paula Turner, wherein SCE specifically informed the DEFENDANTS and Ms. Turner of SCE's inability to provide the power the Development was requesting for approximately five years from that point in time.

106.   PLAINTIFF is recently informed and believes and thereon alleges that knowing of such electrical power issues affecting the Development, on or about

COMPLAINT FOR DAMAGES

October 31, 2017, Ms. Turner sent e-mail correspondence to DEFENDANT KENNETH addressing the power issue at the Development. Specifically, Ms. Turner asserted to DEFENDANT KENNETH, "*Fyi. I have several that are deciding to wait on Coachillin. When I ask why they are concerned about when the utilities are coming. I have a feeling rumors are spreading again…*" In furtherance of this correspondence and DEFENDANT COACHILLIN'S, ENERGY'S, WILLIAM'S and KENNETH'S conspiracy, DEFENDANT KENNETH then sent an e-mail on that same date to DEFENDANT WILLIAM, acknowledging the electrical power deficiency issue and related rumors, and scrambling to find a temporary generator / power solution, which, in desperation, he asserted he located out of South Korea.

107.   PLAINTIFF is informed and believes and thereon alleges that in light of the DEFENDANTS' knowledge that potential purchasers were declining overtures to purchase land within the Development and despite being expressly knowledgeable that SCE was unable to actually deliver any electrical power to the Development for at least several years, out of desperation to actually sell parcels of land within the Development, DEFENDANTS intentionally and knowingly engaged in efforts to covet and conceal the true and actual information, and instead, were continuously making material misrepresentations to the PLAINTIFF that electrical power would be delivered to the Development within the aforementioned timelines.   PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS knew at all times they were making all such representations that not only were such representations false, misleading, and fraudulent, but that such applicable timeframes expressly represented and promised by the DEFENDANTS for electrical power to be delivered to the Development were actually impossible.

108.   PLAINTIFF is informed and believes and thereon alleges that in addition to the DEFENDANTS material misrepresentations about the timelines of when electrical power would be delivered to the Development, DEFENDANTS also made a number of material misrepresentations to the PLAINTIFF about

DEFENDANTS having previously negotiated and secured "agricultural rates" to be charged by SCE to each of the parcel owners within the Development, all of which the DEFENDANTS represented would serve as a substantial cost savings to each of the parcel owners, including the PLAINTIFF.  Just as with the numerous other misrepresentations that were made by the DEFENDANTS, to this very date, no such substantial cost savings through "agricultural power rates," as expressly promised by the DEFENDANTS, has ever been realized by the PLAINTIFF, as electrical power to PLAINTIFF'S Parcel No. 28 still has never been provided.  Notably, said representations by the DEFENDANTS concerning agricultural power rates and the purported cost savings related thereto was a significant material inducement for the PLANTIFF to enter into its PSA with the DEFENDANTS, and thereafter close upon the purchase of its parcel of land within the Development.

109.   PLAINTIFF is informed and believes and thereon alleges that as is set forth above, prior to the PLAINTIFF'S purchase of its parcel of land within the Development, it was expressly represented by the DEFENDANTS, both orally and in writing, that the Development would include various Amenities to be utilized by the parcel owners within the Development, including the PLAINTIFF, which would be fully completed within the Development well before the time that the PLAINTIFF would be able to complete the development and construction of all improvements upon and within its parcel.   Moreover, DEFENDANTS' written advertisements that were in existence prior to the PLAINTIFF purchasing its parcel of land within the Development also asserted certain Amenities, such as the private club and the laboratory facility had already been "leased" and such development was imminent.  Despite all such material misrepresentations by the DEFENDANTS, to date, none of these Amenities have ever even been constructed by or on behalf of any of the DEFENDANTS.  Said representations by the DEFENDANTS concerning all of the Development's Amenities, including the purported timelines for which each such Amenity would be completed within the Development was a material

COMPLAINT FOR DAMAGES

inducement for the PLANTIFF to enter into its PSA with the DEFENDANTS, and thereafter close upon the purchase of its parcel of land within the Development.

110.   PLAINTIFF is informed and believes and thereon alleges that due to the aforementioned acts of prior and continuing despicable conduct and actions of the DEFENDANTS, including additional permit violations, outright violations of laws and regulations, as well as other dilatory and despicable conduct, PLAINTIFF'S parcel within the Development has been harmed and continues to remain in grave jeopardy, especially if the DEFEDANTS' unlawful conduct is allowed to persist.   Specifically, PLAINTIFF has significant concerns that its attempts to further engage in legal business operations will continue to be harmed and will ultimately be significantly impacted due to the DEFENDANTS, and each of their, continuing bad acts and violations of law, all in an effort by the DEFEDANTS, and each of them, to operate the Development as they choose, with little to no regard for laws, rules, regulations, or others.

111.   Similar to the DEFENDANTS' intentional unlawful dumping and disposal of cannabis wastewater upon open lands within the Development, PLAINTIFF is informed and believes and thereon alleges that a third-party parcel owner within the Development has also been unlawfully granted the right and ability by the DEFENDANTS to illegally dump used / fertilized cannabis soil onto a neighboring lot, located outside of and adjacent to the Development, which is also believed to be owned, maintained, and/or otherwise controlled by another business entity owned by DEFENDANT WILLIAM.  PLAINTIFF is informed and believes and thereon alleges that the lot where the DEFENDANTS are allowing the unlawful dumping and disposal of used / fertilized cannabis soil is the same area of land where COACHILLIN, ENERGY, KENNETH, WILLIAM, and/or other DEFENDANTS are unlawfully operating their unpermitted **OFFSITE** sewage treatment plant.   Specifically, PLAINTIFF is informed and believes, and thereon alleges that Holland Hydroponics USA, LLC, the operator of a separate and distinct

parcel within the Development, has been unlawfully granted the ability to illegally dump and dispose of their used / fertilized cannabis soil upon DEFENDANT WILLIAM'S neighboring land.  Moreover, PLAINTIFF is informed and believes and thereon alleges that Holland Hydroponics USA, LLC, has shared a uniquely close relationship with the DEFENDANTS, as Holland Hydroponics has also shared the same office space with the DEFENDANTS (at the same address) and Holland Hydroponics USA, LLC has even been recommended and retained as a subcontractor by the DEFENDANTS for various construction-related projects within the Development.  Such intentional act by the DEFENDANTS is not only believed by the PLAINTIFF to be illegal and in violation of the Development's development-related documents, as have been identified above,  but such acts are also believed to be extremely detrimental to local environmental conditions and can have grave consequences for the PLAINTIFF and their related property within the Development.

112.  Due to DEFENDANTS' unlawful, egregious, conspiring, and fraudulent conduct, the PLAINTIFF has been irreparably harmed, and the value of the PLAINTIFF'S property has been significantly diminished, and has now become unmarketable.   As such, PLAINTIFF has been irreparably harmed by DEFENDANTS' conduct as alleged herein.

113.  PLAINTIFF is informed and believes and thereon alleges that following the closing of the transaction for the purchase of PLAINTIFF'S respective parcel of land within the Development, PLAINTIFF expended significant monies and/or other assets in an effort to construct, develop, and implement various improvements and structures upon its parcel of land.

114.  PLAINTIFF is informed and believes and thereon alleges that in or about September 2021, PLAINTIFF and third-party California New Co, LLC entered into a written Real Estate and Business Asset Purchase and Sale Agreement (the "California New Co Agreement") for the purchase and sale of the

PLAINTIFF'S particular parcel of land within the Development, as well as the PLAINTIFF'S business assets located therein.

115.   PLAINTIFF is informed and believes and thereon alleges that pursuant to said California New Co Agreement, PLAINTIFF and third party California New Co, LLC expressly agreed that PLAINTIFF would sell and convey to California New Co its particular land within the Development, improvements thereon, and other business assets then belonging to the PLAINTIFF for the total purchase price of Three Million Six Hundred Thousand Dollars and 0/100 cents ($3,600,000.00).

116.   PLAINTIFF is informed and believes and thereon alleges that prior to the closing of the transactions set forth within the California New Co Agreement, California New Co sought to engage in various due diligence efforts concerning the PLAINTIFF'S parcel of land, as well as the Development in its entirety.  In doing so, PLAINTIFF is informed and believes and thereon alleges that California New Co communicated with DEFENDANTS COACHILLIN and KENNETH in an effort to pursue such due diligence efforts.  During such communications and other due diligence efforts by California New Co, California New Co expressly informed DEFENDANTS COACHILLIN and KENNETH of the existence of the California New Co Agreement, the transactions intended therein, as well as its intent to close upon and consummate all such transactions in the immediate future.

117.   PLAINTIFF is informed and believes and thereon alleges that during such communications and deals between California New Co and DEFENDANTS COACHILLIN and KENNETH, DEFENDANTS COACHILLIN and KENNETH engaged in intentional actions which were designed to interfere with and/or otherwise usurp the California New Co Agreement and the specific transactions contemplated therein.   For example, DEFENDANTS COACHILLIN and KENNETH intentionally and knowingly solicited California New Co to breach its present agreement with PLAINTIFF and thereby not close upon and/or

consummate the transactions therein, but instead sought to induce and solicit California New Co to purchase parcel(s) of land within the Development solely and directly from DEFENDANTS COACHILLIN and KENNETH, instead of from the PLANITFF as California New Co originally intended.  As such, PLAINTIFF is informed and believe and thereon alleges that DEFENDANTS COACHILLIN and KENNETH willfully and consciously disregarded the rights and interests of the PLAINTIFF and engaged in intentional actions in an effort to sabotage the written California New Co Agreement between PLAINTIFF and California New Co, all so that DEFENDANTS COACHILLIN and KENNETH could reap the potential benefits from California New Co, all to PLAINTIFF'S detriment.

118.   PLAINTIFF is informed and believes and thereon alleges that as a direct and proximate result of DEFENDANTS COACHILLIN'S and KENNETH'S efforts to undermine, disrupt, usurp, and interfere with the existing agreement between PLAINTIFF and California New Co, an actual disruption to the agreement between such parties occurred in that California New Co thereafter chose to breach the California New Co Agreement with the PLAINTIFF, and thereafter failed to consummate any of the transactions previously agreed upon within the California New Co Agreement between itself and the PLAINTIFF.

119.   PLAINTIFF is informed and believes and thereon alleges that on or about February 8, 2022, DEFENDANTS KATHERINE, KENNETH, and the POA hosted a telephonic meeting between said DEFENDANTS and all such parcel owners within the Development, including without limitation, the PLAINTIFF. Said telephonic meeting was recorded by DEFENDANTS KATHERINE, KENNETH, and the POA, and thereafter willingly distributed by said DEFENDANTS to others.

120.   PLAINTIFF is informed and believes and thereon alleges that during said above-referenced telephonic meeting, DEFENDANTS KATHERINE and KENNETH, on behalf of themselves as well as on behalf of DEFENDANTS

COMPLAINT FOR DAMAGES

COACHILLIN and ENERGY each discussed a variety of issues concerning the Development as well as the PLAINTIFF'S parcel of land located therein, including without limitation, those significant "connection fees" which the DEFENDANTS unlawfully attempted to charge and force the PLAINTIFF into paying to the DEFENDANTS, as is set forth herein.  For example, during said telephonic meeting, it was expressly represented and confirmed by DEFENDANTS KENNETH and KATHERINE as well as by third-party attorney Glen W. Price, Esq., who the PLAINTIFF believes is an attorney for DEFENDANT COACHILLIN, that DEFENDANT ENERGY'S continued attempts to unilaterally charge all parcel owners within the Development, including the PLAINTIFF, all such significant additional demanded "connection fees" by and through the Offsite Sewage Agreement is solely to *"reimburse [DEFENDANT] COACHILLIN for [costs associated with the construction of utility] 'stub-in' connections."* PLAINTIFF is informed and believes and thereon alleges that during said telephonic meeting, DEFENDANTS KENNETH and KATHERINE, on behalf of themselves, as well as the other DEFENDANTS, expressly represented to each of the parcel owners within the Development, including to the PLAINTIFF, that the utility "stub-ins" which DEFENDANT ENERGY attempted to unilaterally charge significant "connection fees" for are only those "stub-ins" which connect the infrastructure from within each respective parcel within the Development to the Development's main utility infrastructure.  As is already set forth and established herein, PLAINTIFF is informed and believes and thereon alleges that pursuant to its respective parcel Purchase and Sale Agreement, it was expressly represented and agreed to by the DEFENDANTS that *"The lot to be purchased by [the PLAINTIFF]…shall have electricity, domestic water, sewer, cable, and gas **STUBBED IN TO**…"* PLAINTIFF'S lot.  As such, PLAINTIFF is informed and believes and thereon alleges that pursuant to the DEFENDANTS' own express representations, as are set forth herein, not only was DEFENDANT COACHILLIN

COMPLAINT FOR DAMAGES

contractually obligated for all such costs associated with the development, construction, and installation of all such utility "stub-ins," but DEFENDANTS are now unlawfully attempting to disregard those obligations which they already expressly agreed to and are also attempting to unilaterally alter their respective contractual obligations owed to the PLAINTIFF and thereby force the PLAINTIFF into paying DEFENDANT ENERGY significant "connection fees" in order to *"reimburse [DEFENDANT] COACHILLIN for [its costs associated with the construction of the very utility] 'stub-in' connections"* despite DEFENDANT COACHILLIN already being contractually obligated to incur and fully pay for all such costs and fees.

121.   PLAINTIFF is informed and believes and thereon alleges that despite DEFENDANTS KENNETH and KATHERINE, as well as third-party attorney Glen W. Price, Esq. expressly representing on multiple occasions during the above-referenced telephonic meeting to each of the parcel owners within the Development, including to the PLAINTIFF, that such significant "connection fees" which are and continue to be forced upon the PLAINTIFF by the DEFENDANTS are solely to reimburse DEFENDANT COACHILLIN for all of its costs actually incurred in connection with the construction and installation of such utility "stub-in" connections for the PLAINTIFF'S parcel of land, during such telephonic meeting, DEFENDANT KENNETH actually expressly admitted and confirmed to the PLAINTIFF that as of the date of the parties' respective telephonic meeting, none of the DEFENDANTS have even *"broken out"* and/or otherwise calculated any of the costs actually incurred by any of the DEFENDANTS in connection with any such construction and installation of any utility "stub-in" connections for any parcels of land within the Development, including that parcel which is owned by the PLAINTIFF.  PLAINTIFF is informed and believes and thereon alleges during such telephonic meeting, DEFENDANT KENNETH, on behalf of the other DEFENDANTS, expressly represented to each of the parcel owners, including to

the PLAINTIFF, that the total costs incurred by any of the DEFENDANTS in connection with the development, construction, and installation of all such "main backbone infrastructure" for the entire Development was approximately $781,000.00. As such, PLAINTIFF is informed and believes and thereon alleges that by the DEFENDANTS now attempting to unilaterally and unlawfully force each of the parcel owners within the Development, including the PLAINTIFF, to pay substantial additional "connection fees" in a monetary amount which DEFENDANT KENNETH has already admitted is not even based upon any sort of actual tabulation of costs actually incurred by any of the DEFENDANTS in connection with the construction and installation of such utility "stub-ins," DEFENDANTS are actually attempting to somehow represent that the costs supposedly borne by the DEFENDANTS in connection with the construction and installation of such utility "stub-ins," is supposedly more than four (4) times the monetary amount of those costs represented to be actually borne by any of the DEFENDANTS in connection with the development, construction, and installation of the entirety of all such "main backbone infrastructure" for the Development. Again, pursuant to the PLAINTIFF'S Purchase and Sale Agreement, DEFENDANT COACHILLIN was and continues to be contractually obligated to pay for all of those very fees and/or other costs which the DEFENDANTS are now unlawfully attempting to force and cause the PLAINTIFF, as well as other property owners, to pay.

122. As is previously set forth and established herein, it was a material inducement to the PLAINTIFF in determining to purchase its parcel of land within the Development that all domestic water and sewage provisions of the Development would ultimately be provided to the PLAINTIFF by MSWD. As is also previously set forth and established herein, PLAINTIFF is informed and believes and thereon alleges that the DEFENDANTS have unilaterally engaged in substantial efforts to form an independent and stand-alone water mutual and amend

COMPLAINT FOR DAMAGES

the CC&R's, in part, due to the DEFENDANTS unilaterally seeking to negate their obligations to assign and transfer all rights and interests of the water and sewage infrastructure within the Development to MSWD, as the DEFENDANTS are presently required to do.  PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS' conduct is a rather apparent concerted effort to cause each of the property owners within the Development, including the PLAINTIFF, to be forced into using the DEFENDANTS' privatized, yet inferior, offsite sewage treatment system, all so that the DEFENDANTS can reap significant additional financial benefits that they are otherwise not entitled to, all to the extreme detriment of the PLAINTIFF.

123.   PLAINTIFF is informed and believes and thereon alleges that prior to the initiation of this present action, MSWD has already commenced its development and construction efforts in building its regional utility plant that will be used to serve the Development upon the completion of such regional utility plant which is presently scheduled to be completed in 2023.  Moreover, PLAINTIFF is informed and believes and thereon alleges that on February 8, 2022, DEFENDANT KENNETH on behalf of himself and the other DEFENDANTS intentionally and fraudulently made various disingenuous representations to each of the property owners within the Development, including to the PLAINTIFF, concerning the present status of MSWD's overall development and construction efforts of its regional utility plant, all in a further effort to falsely induce the property owners into agreeing to move forward with the DEFENDANTS' proffered water mutual. Specifically, DEFENDANT KENNETH disingenuously represented that as of the date of the parties telephonic meeting, not only had MSWD failed to raise the necessary monies to even develop and build its intended regional utility plant, but that he also supposedly travels to the very location where MSWD is supposed to be developing and constructing its regional utility plant *"every single day of the week,"* and that he can supposedly confirm that MSWD had not even commenced

COMPLAINT FOR DAMAGES

its development and construction efforts of its regional utility plant.  Moreover, DEFENDANT KENNETH further disingenuously represented to each of the property owners, including to the PLAINTIFF, that it would actually be *"a physical impossibility"* for MSWD to complete its development and construction efforts upon its regional utility plant by 2023.

124.   PLAINTIFF is informed and believes and thereon alleges that despite the DEFENDANTS' prior material representations to the PLAINTIFF that all such rights and interests of the water and sewage infrastructure within the Development would be assigned and transferred to MSWD, as is set forth herein, during the parties above-referenced telephonic meeting on February 8, 2022, DEFENDANT KENNETH, on behalf of himself as well as the other DEFENDANTS, further represented to each of the property owners, including the PLAINTIFF, that such water and sewage infrastructure within the Development will not even be assigned and transferred to MSWD unless and until such time that MSWD will also now agree to take on the additional obligation to accept each of the parcel owners' respective cannabis wastewater from the same infrastructure piping as such parcel owners' domestic wastewater, which according to DEFENDANT KENNETH, will likely never happen.

125.   PLAINTIFF is informed and believes and thereon alleges that in addition to the DEFENDANTS intentionally and yet unlawfully dumping and/or disposing of cannabis wastewater directly within the Development, as is previously set forth herein, during the parties above-referenced telephonic meeting on February 8, 2022, DEFENDANT KENNETH on behalf of himself and the other DEFENDANTS, further expressly represented and admitted to each of the parcel owners, including the PLAINTIFF, that he and the other DEFENDANTS have and continue to intentionally capture the used and contaminated cannabis wastewater from the businesses operating from within Parcel 33 of the Development, which the PLAINTIFF believes to be owned and managed by DEFENDANTS

COMPLAINT FOR DAMAGES

KENNETH, WILLIAM, and COACHILLIN, and then the DEFENDANTS intentionally, and yet unlawfully, dispose of such captured cannabis wastewater by spraying and/or otherwise dumping such contaminated cannabis wastewater onto the landscaping within the Development, onto the roads within the Development, as well as on the undeveloped areas within the Development and the adjacent lot of land where the OWTDS is located which is also owned by DEFENDANT WILLIAM.  PLAINTIFF is informed and believes and thereon alleges that such intentional acts by the DEFENDANTS are not only believed by the PLAINTIFF to be illegal and in further violation of the Development's development-related documents, as have been identified above, but such acts are also believed to be extremely detrimental to local environmental conditions and can have grave consequences for the PLAINTIFF and its related property within the Development, as well as the local community as a whole should such contaminated and unlawfully disposed of cannabis waste ever infiltrate the local ground water wells.

126.   PLAINTIFF is informed and believes and thereon alleges that on or about February 24, 2022, an inspection of the Development took place by the California State Water Resources Board and the Lahontan Regional Water Quality Control Board.   PLAINTIFF is informed and believes and thereon alleges that as a result of this inspection, that the Coachillin Industrial Cultivation & Ancillary Canna-Business Park Inspection Report (the "Inspection Report") was created. Pursuant to the Inspection Report, attendees of this February 24, 2022 inspection included, without limitation, DEFENDANT KENNETH and DEFENDANT KATHERINE.

127.  PLAINTIFF is informed and believes and thereon alleges that pursuant to the Inspection Report, when asked if DEFENDANT COACHILLIN' owned the land that the treatment system was located on, DEFENDANT KENNETH expressly admitted and confirmed that "*the land is owned…under a different title, which is Moreland*."

128.   PLAINTIFF is informed and believes and thereon alleges that the Inspection Report delineates eight (8) separate and distinct findings.  Specifically:

*1.  The treatment system location does not match Coachillin's WDR;*

*2.  The discharge location for the treatment system does not match Coachillin's WDR;*

*3.The owner of the land where the treatment system is located is not listed in Coachillin's WDR;*

*4. Uncertified operators are turning on the treatment system;*

*5. The WDR was not on site at the time of the inspection;*

*6. The operator certificates were not on site at the time of inspection;*

*7. Total nitrogen in the treatment system's effluent exceed permit limitations; and*

*8. Coachillin' is using cannabis wastewater for dust control.*

129.   PLAINTIFF is informed and believes and thereon alleges that due to DEFENDANTS egregious violations and unlawful actions that were discovered, in part, during the aforementioned February 24, 2022 inspection by the California State Water Resources Board, on April 22, 2022, the Colorado River Basin Regional Water Quality Control Board issued a Notice of Violation for DEFENDANT COACHILLIN (the "4/22/2022 Notice of Violation").    The California Regional Water Quality Control Board, Colorado River Basin "*is the public agency with primary responsibility for the protection of ground and surface water quality for all beneficial uses within Riverside County, including the Property*," and the 4/22/2022 Notice of Violation discusses various violations concerning activities related to cannabis cultivation occurring at Riverside County Assessor's Parcel Number ("APN") 666-340-052, and directs DEFENDANT COACHILLIN to immediately take corrective action.

130.   PLAINTIFF is informed and believes and thereon alleges that such 4/22/2022 Notice of Violation specifically states, "*On February 24, 2022,*

77

*staff...conducted an inspection of the Coachillin Business Park (Business park) (Attachment A, Inspection Report).  Kenneth Dickerson and Katherine Beneteau guided Water Board staff around the Property.  During the inspection, staff observed a 5,000-gallon tank partially buried on the northern edge of a stormwater basis.  Kenneth Dickerson confirmed that this tank was used for storage of cannabis cultivation wastewater and that the wastewater was mixed with irrigation water from the onsite well...The wastewater was then emptied by a truck and discharged throughout the Business Park for use as landscaping and dust control.  Reports were provided [by DEFENDANTS] for all months in 2021 that listed the quantity of wastewater pumped out of the tank and measured TDS levels.  Based on the reports provided, a total of 398,200 gallons of cannabis wastewater were discharged to land [by the DEFENDANTS] between January 4, 2021 – December 21, 2021.*"

131.   PLAINTIFF is informed and believes and thereon alleges that such 4/22/2022 Notice of Violation specifically notifies DEFENDANTS that they have failed to comply with California Water Code, Section 13260, *et seq*. DEFENDANTS' actions and/or inactions in this regard "*may result in additional enforcement action, including, but not limited to, administrative civil liability.  For violations of Water Code section 13260 and/or 13264, the Regional Water Board may impose administrative civil liability of up to $1,000 per day of violation*…"

132.   PLAINTIFF is informed and believes and thereon alleges that in addition to the 4/22/2022 Notice of Violation, on April 25, 2022, the Colorado River Basin Regional Water Quality Control Board issued a Notice of Violation to DEFENDANT ENERGY (the "4/25/2022 Notice of Violation").   Within this particular 4/25/2022 Notice of Violation, the Regional Water Board acknowledges that it has reviewed the DEFENDANTS' Self-Monitoring Reports for the Development that the DEFENDANTS themselves submitted to the Regional Water Board.

COMPLAINT FOR DAMAGES

133.   PLAINTIFF is informed and believes and thereon alleges that the 4/25/2022 Notice of Violation expressly notifies the DEFENDANTS that "*Coachillin' Business Park OWTS (onsite wastewater treatment system) is in non-compliance with…Order R7-2020-029; and has violated California Water Code (CWC) section 13350…*"

134.   PLAINTIFF is informed and believes and thereon alleges that the 4/25/2022 Notice of Violation delineates that "*Order R7-2020-0029, Effluent Limitations Section A.2 states that effluent limits shall not exceed a Total Nitrogen (TN) monthly average of 10 mg/L and a Total Dissolved Solids (TDS) monthly average of 580 mg/L.*"  The 4/25/2020 Notice of Violation then presents a table which evidences that on a monthly basis, DEFENDANTS violated Order R7-2020-0029 by grossly exceeding the allowable limits, typically ranging in an exceedance of no less than three to four times the allowable limits.

135.   PLAINTIFF is informed and believes and thereon alleges that the 4/25/2022 Notice of Violation delineates that Section B.5 of Order R7-2020-0029 states that "*discharge of wastewater to a location or in a manner different from that described in the order is prohibited.  The Order states that the OWTS is to be constructed in the south-east corner of the Coachillin' Business Park.  Based on the February 24, 2022 inspection and satellite imagery, it has been determined that the OWTS was built on land not specified in the Order, approximately a quarter mile to the east of the proposed location.  Furthermore, the owner of the land, Moreland Properties LLC, is not named in the Order.*"

136.   PLAINTIFF is informed and believes and thereon alleges that the 4/25/2022 Notice of Violation expressly sets forth that DEFENDANTS' acts constituting a violation of "*Order R7-2020-0029 is a violation of state law*…"

137.   Of late, DEFENDANTS have been circulating information to the parcel owners within the Development, including to the PLAINTIFF, that it is their express intent to abandon their plans which they used to induce the PLAINTIFF,

COMPLAINT FOR DAMAGES

as well as various other parcel owners, into purchasing their respective parcels of land within the Development; namely that while the DEFENDANTS were originally going to build an all-inclusive business park and utopia, with all of the utilities and Amenities necessary to provide each of the property owners with a comprehensive and all-encompassing campus to help them succeed with their respective businesses and which was not only one of the reasons for the inflated purchase prices of the land within the Development but which were material inducements for the PLAINTIFF'S purchase of its respective parcel of land within the Development, it is the DEFENDANT'S express intent to now divert from such plans, rescind and amend their previously approved Specific Plan with the City of Desert Hot Springs, bankrupt the POA, not fulfill a myriad of promises made to the PLAINTIFF and other parcel owners, and turn the Development into a general business park, thereby abandoning the PLAINTIFF and the other similarly situated property owners, and attempt to leave them without recourse, all to the PLAINTIFF'S significant detriment.

138.   PLAINTIFF is informed and believes and thereon alleges that on or about March 22, 2022, through its prior Counsel of Record, Ms. Lisamarie McDermott, Esq., PLAINTIFF attempted to inquire from the DEFENDANTS if they would be willing to engage in the mediation process in an effort to mediate all such issues and disputes set forth within this Complaint.  PLAINTIFF is informed and believes and thereon alleges that on or about March 23, 2022, DEFENDANT KENNETH, on behalf of himself and other DEFENDANTS, delivered written correspondence to PLAINTIFF'S prior Counsel of Record, wherein DEFENDANT KENNETH represented that DEFENDANTS were not interested in participating in traditional forms of mediation and that "*Coachillin WILL NOT settle these nefarious claims. Therefore, you should go ahead and file any claims as you see fit, where you see fit*."  As such, it is PLAINTIFF'S understanding that despite the PLAINTIFF'S efforts to the contrary, the DEFENDANTS refused to properly

engage in any such mediation procedures concerning the dispute and issues set forth within this Complaint, despite being contractually obligated to do so.

## FIRST CAUSE OF ACTION

### Breach of Contract

PLAINTIFF DHS VERDE against DEFENDANT COACHILLIN

and DOES 1 through 50, Inclusive

139.   PLAINTIFF realleges and incorporates by reference each and every allegation contained within paragraphs 1 through 138, inclusive, as if the same were fully set forth herein.

140.   PLAINTIFF DHS VERDE is informed and believes and thereon alleges that on or about January 23, 2018, and in reliance of all of the DEFENDANTS' above-referenced material representations, the written Parcel 28 Vacant Land Purchase Agreement and Joint Escrow Instructions (referred to herein as the "Vacant Land Purchase Agreement" and/or the "PSA") was initially entered into by PLAINTIFF DHS VERDE as well as by DEFENDANT KENNETH on behalf of DEFENDANT COACHILLIN for the purchase of land commonly known as "Parcel 28" within the Development.

141.   PLAINTIFF is informed and believes and thereon alleges that pursuant to its written Vacant Land Purchase Agreement, PLAINTIFF DHS VERDE and DEFENDANT COACHILLIN expressly agreed that various obligations would be imposed upon them in conjunction with the purchase and sale of the PLAINTIFF'S parcel of land within the Development.  For example, as is previously set forth herein, pursuant to the above-referenced Vacant Land Purchase Agreement, the PLAINTIFF agreed that it would be obligated to render to DEFENDANT COACHILLIN, upon the closing of the transaction, the applicable agreed-upon purchase price for the purchase of Parcel No. 28 within the Development, which all such obligations have been fully satisfied.  Additionally,

pursuant to the above-referenced Vacant Land Purchase Agreement, DEFENDANT COACHILLIN also expressly agreed to be obligated, whether financially or otherwise, to the PLAINTIFF, in connection with engaging in various actions, obligations, and/or other commitments concerning such parcel of land, as is already expressly set forth within the above-referenced Vacant Land Purchase Agreement and which is already set forth and established herein.

142.   PLAINTIFF is informed and believes and thereon alleges that it has already performed and/or otherwise complied with the terms, conditions, and obligations of its Vacant Land Purchase Agreement with DEFENDANT COACHILLIN which were imposed upon it.

143.   PLAINTIFF is informed and believes and thereon alleges that by and through the conduct, actions, and/or inactions of the DEFENDANTS, as are set forth within this Complaint, DEFENDANT COACHILLIN has failed to perform its above-referenced and agreed-upon contractual obligations, and thus, has breached and is continuing to breach the parties' respective Vacant Land Purchase Agreement, all to the significant damage and detriment of the PLAINTIFF.

144.   PLAINTIFF is informed and believes and thereon alleges that DEFENDANT COACHILLIN, with the knowledge of, assistance of, and at the direction of DEFENDANTS KENNETH, KATHERINE, WILLIAM, and MICHAEL, as is set forth herein, has breached and is continuing to breach the PLAINTIFF'S Vacant Land Purchase Agreement by failing and/or otherwise intentionally refusing to adhere to and/or otherwise fulfill its obligations pursuant to the PLAINTIFF'S Vacant Land Purchase Agreement, failing to abide by the agreed-upon terms and conditions of said respective Vacant Land Purchase Agreement, intentionally attempting to unilaterally usurp and change the terms, conditions, and obligations of the parties' pursuant to such Vacant Land Purchase Agreement, intentionally attempting to unilaterally change and increase the overall monies and other costs to be borne by the PLAINTIFF pursuant to the parties'

respective Vacant Land Purchase Agreement, unilaterally acting outside of the scope of the terms and conditions of the parties' respective Vacant Land Purchase Agreement, all without any express approval and/or authority by the PLAINTIFF, and unilaterally attempting to charge the PLAINTIFF substantial additional fees and/or other costs which were never agreed-upon by the PLAINTIFF.  PLAINTIFF is informed and believes and thereon alleges that at no time did DEFENDANT COACHILLIN have a legal excuse and/or justification for failing to fulfill its above-referenced contractual obligations and/or otherwise engaging in those actions and/or inactions as are set forth within this Complaint.

145.   PLAINTIFF is informed and believes and thereon alleges that by and through the conduct, actions, and/or inactions of DEFENDANT COACHILLIN, as alleged herein, DEFENDANT COACHILLIN has breached and is continuing to breach the parties' respective Vacant Land Purchase Agreement, all to the significant damage and detriment of the PLAINTIFF.

146.   PLAINTIFF is informed and believes and hereon alleges that as a direct and proximate result of DEFENDANT COACHILLIN'S conduct, actions, and/or inactions in breaching and continuing to breach the parties' Vacant Land Purchase Agreement, as is set forth and established within this Complaint, the PLAINTIFF was caused and continues to be caused to be harmed and have suffered significant damages in a sum according to proof at the time of trial, but which are in excess of this Court's minimum jurisdictional amount.

147.   PLAINTIFF is informed and believes and thereon alleges that the willful, intentional, deliberate, reckless, and other unlawful conduct of DEFENDANT COACHILLIN, as delineated herein, was and continues to be a breach of its contractual obligations which are owed to the PLAINTIFF, and at all times, the PLAINTIFF was and continues to be harmed.   Consequently, PLAINTIFF is entitled to general and compensatory damages against

DEFENDANT COACHILLIN in an amount to be determined at trial, but which are in excess of this Court's minimum jurisdictional amount.

148.   PLAINTIFF is informed and believes and thereon alleges that pursuant to California Civil Code, Section 1717(a), the PLAINTIFF is further entitled to a recovery of all of its respective attorneys' fees and related costs due to DEFENDANT COACHILLIN'S various breaches and continued breaches of the parties' respective Vacant Land Purchase Agreement on account of the fact that the Vacant Land Purchase Agreement specifically entitles PLAINTIFF to a recovery of such fees and related costs in the event that a legal action is commenced which arises out of the parties' respective Vacant Land Purchase Agreement.

## SECOND CAUSE OF ACTION

### Breach of CC&RS

PLAINTIFF DHS VERDE against DEFENDANTS POA, COACHILLIN, KENNETH, WILLIAM, KATHERINE, KIRSTEN

and DOES 1 through 50, Inclusive

149.   PLAINTIFF realleges and incorporates by reference each and every allegation contained within paragraphs 1 through 148, inclusive, as if the same were fully set forth herein.

150.   As is set forth herein, at the time that the PLAINTIFF entered into its Vacant Land Purchase Agreement and closed upon the respective transactions relating thereto, PLAINTIFF understood that the Development, including its parcel of land therein, would be governed pursuant to the initial CC&R's, which have since been amended and superseded by the present CC&R's.

151. PLAINTIFF has performed all of the conditions, covenants, obligations, and/or other promises required of it under the CC&R's, except for those which have been waived, excused, and/or rendered impossible by the

COMPLAINT FOR DAMAGES

conduct, acts, or inactions of DEFENDANTS POA, COACHILLIN, KENNETH, WILLIAM, KATHERINE, and KIRSTEN.

152. PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS POA, COACHILLIN, KENNETH, WILLIAM, KATHERINE, and KIRSTEN have breached and continue to breach and violate the terms and conditions of the CC&R's which govern the Development, including without limitation, by levying assessments and fees on all parcel owners located therein, including upon the PLAINTIFF, all in an effort to fund DEFENDANTS COACHILLIN'S, KENNETH'S, and WILLIAM'S construction of Initial Common Infrastructure, as well as Common Area Expenses, as is set forth within this Complaint. Further, PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS POA, COACHILLIN, KENNETH, WILLIAM, KATHERINE, and KIRSTEN have and continue to breach and violate the CC&R's by attempting to levy impermissible and improper assessments and fees upon all lot owners, including the PLAINTIFF for the DEFENDANTS' own personal expenses and benefits, including without limitation, those expenses relating to such DEFENDANTS' dust mitigation measures within the Development, legal fees related to such DEFENDANTS' own personal matters, as well as the DEFENDANTS' self-dealing and interested transactions, all as is set forth herein. Moreover, DEFENDANT POA, as well as DEFENDANTS KIRSTEN and KATHERINE, as managing agents of the POA, have further breached and violated the CC&R's by permitting, agreeing, and acquiescing in DEFENDANTS COACHILLIN'S, KENNETH'S, and WILLIAM'S efforts to so dominate and control the CC&R's such that the POA was derelict in its duties to manage and enforce the CC&R's, and thereby allowed DEFENDANTS COACHILLIN, KENNETH, and WILLIAM to treat the Development as their own, engage in self-dealing and self-interested transactions, and act in disregard for the other members of the POA, including the PLAINTIFF. In this regard, DEFENDANTS

KENNETH, WILLIAM, KIRSTEN, and KATHERINE have engaged in various actions to cause the POA to act to the personal benefit of such DEFENDANTS and the detriment of various parcel owners, including the PLAINTIFF, by attempting to charge and levy disparate fees and assessments to "active" and "developed" parcels, which benefited such DEFENDANTS as they maintain and/or otherwise own a majority of the "inactive" and/or "non-developed" parcels within the Development.

153.   As a direct and proximate result of DEFENDANTS POA'S, COACHILLIN'S, KENNETH'S, WILLIAM'S, KATHERINE'S, and KIRSTEN'S conduct, actions, and/or inactions in breaching and violating the CC&R's, as is set forth and established within this Complaint, the PLAINTIFF was caused and continues to be caused to be harmed and have suffered damages in an amount according to proof at the time of trial, but which is in excess of this Court's minimal jurisdictional amount. Additionally, PLAINTIFF is informed and believes and thereon alleges that due to the respective DEFENDANTS breach of the CC&Rs, as is set forth within this Complaint, said CC&Rs specifically entitle the PLAINTIFF to a recovery of all of its respective attorneys' fees and related costs.

## **THIRD CAUSE OF ACTION**

### **Breach of Fiduciary Duty**

PLAINTIFF DHS VERDE against DEFENDANTS POA, KATHERINE, KIRSTEN,

and DOES 1 through 50, Inclusive

154.   PLAINTIFF realleges and incorporates by reference each and every allegation contained within paragraphs 1 through 153, inclusive, as if the same were fully set forth herein.

155.   PLAINTIFF is informed and believes and thereon alleges that DEFENDANT POA, as well as DEFENDANTS KIRSTEN and KATHERINE, as

COMPLAINT FOR DAMAGES

the Executive Director and Secretary for DEFENDANT POA, owed fiduciary duties to each of the members of the association, including to the PLAINTIFF. Such fiduciary duties owed by said DEFENDANTS to the PLAINTIFF include but are not limited to: (i) act in the association's members' best interest; (ii) use reasonable care in managing the property and financial affairs of the Development, POA, and all parcel owners; (iii) treat all members of the association fairly and equally; (iv) act reasonably in the exercise of the association's discretionary powers, including rule-making and enforcement; (v) not favor one member over other members of the association; (vi) not engage in self-dealing and conflicted transactions; (vii) keep and maintain accurate corporate records and books of all of the association's transactions; (viii) ensure that proper associational meetings were noticed, held, and appropriately documented; and (ix) provide equal access to all such documents, data, and information concerning the association to all of its members, and thus, not just to DEFENDANTS COACHILLIN, KENNETH, and WILLIAM.

156.   PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS POA, KIRSTEN, and KATHERINE violated their fiduciary duties owed to the PLAINTIFF when they permitted, agreed, acquiesced, and conspired with DEFENDANTS COACHILLIN, KENNETH, and WILLIAM to so dominate and control the POA's affairs such that the POA levied excessive, unreasonable, unapproved, disproportionate, and improper assessments and fees on all parcel owners, including upon the PLAINTIFF, in order to fund the Development's Initial Common Infrastructure and Common Area Expenses which were and continue to be the sole and exclusive obligation of DEFENDANTS COACHILLIN, KENNETH, and WILLIAM.  Moreover, DEFENDANTS POA, KIRSTEN, and KATHERINE have further violated their fiduciary duties owed to the PLAINTIFF when they permitted, agreed, acquiesced, and conspired with DEFENDANTS COACHILLIN, KENNETH, and WILLIAM to so dominate and

COMPLAINT FOR DAMAGES

control the POA's affairs such that the POA levied excessive, unreasonable, unapproved, disproportionate, and improper assessments and fees on all parcel owners, including upon the PLAINTIFF for the DEFENDANTS' own personal expenses and benefits, including without limitation, those expenses relating to such DEFENDANTS' dust mitigation measures within the Development, legal fees related to such DEFENDANTS' own personal matters, as well as the DEFENDANTS self-dealing and interested transactions, all as is set forth herein.

157.  PLAINTIFF has been and continues to be damaged as a result of DEFENDANTS POA'S, KIRSTEN'S, and KATHERINE'S breach and violation of their fiduciary duties, and that such breach of their fiduciary duties by said DEFENDANTS have now and continue to interfere with the PLAINTIFF'S property interests and have reduced and will continue to reduce the value and marketability of its respective property at the Development.  Moreover, due to such DEFENDANTS dereliction of their duties, as is set forth herein, it has allowed and is continuing to allow DEFENDANTS COACHILLIN, KENNETH, and WILLIAM to have ultimate control and management of the POA to the detriment of its other members, including the PLAINTIFF.  As a result and in addition to all damages sought by the PLAINTIFF, the PLAINTIFF further seeks a full and complete accounting from the POA as to all fees and costs which have been incurred, all monies which have been paid and spent, all original and unmodified invoices which have been issued, payments received, all communications between the POA, KIRSTEN, KATHERINE, KENNETH, and WILLIAM, inspection of all of the association's records and books, and an explanation of the fees and costs which the DEFENDANTS are attempting to assert and levy against the PLAINTIFF.

158.  As a direct and proximate result of DEFENDANTS POA'S, KIRSTEN'S, and KATHERINE'S breach and violation of their fiduciary duties, as is set forth herein, PLAINTIFF has been damaged and continues to be damaged in

a sum according to proof at the time of trial, but which is in excess of this Court's minimum jurisdictional amount.

## FOURTH CAUSE OF ACTION

### Breach of Fiduciary Duty

PLAINTIFF DHS VERDE against DEFENDANTS KENNETH

and DOES 1 through 50, Inclusive

159.   PLAINTIFF realleges and incorporates by reference each and every allegation contained within paragraphs 1 through 158, inclusive, as if the same were fully set forth herein.

160.  PLAINTIFF is informed and believes and thereon alleges that DEFENDANT KENNETH, as a Board Member of the POA and as the Declarant in the CC&R's, as well as one of the managing members of DEFENDANT COACHILLIN owed fiduciary duties to the members of the association, including to the PLAINTIFF, which includes but is not limited to always: (i) act in good faith, in compliance with all such applicable laws and documents governing the Development; (ii) deal fairly with the association and each of its members and not seek his own financial and personal interests and benefit, to the detriment of the PLAINTIFF; (iii) not engage in self-dealing and conflict of interest transactions; and (iv) use ordinary care and prudence in performing his functions.

161.  PLAINTIFF is informed and believes and thereon alleges that DEFENDANT KENNETH has violated his fiduciary duties owed to the PLAINTIFF when he interfered with and controlled the POA by demanding that the POA as well as DEFENDANTS KIRSTEN and KATHERINE, levy and assess excessive, unreasonable, unapproved, disproportionate, and improper assessments on all parcel owners, including upon the PLAINTIFF, in order to fund the Development's Initial Common Infrastructure as well as Common Area Expenses, which were owed solely and exclusively by DEFENDANTS COACHILLIN,

COMPLAINT FOR DAMAGES

KENNETH, and WILLIAM, as well as also seeking to impose significant additional charges and fees upon the PLAINTIFF, which was never agreed upon, all as is set forth herein.  Moreover, as is also set forth within this Complaint, DEFENDANT KENNETH has engaged in and will continue to engage in egregious self-dealing and conflict of interest transactions while acting in his capacity as the Declarant of the Development while at the same time unilaterally entering into various agreements with unfavorable terms for the POA and the Development with companies that he himself owns and controls, and as such, personally benefits from. Furthermore, as is also set forth within this Complaint, DEFENDANT KENNETH has directed, dominated, and used the POA for his own benefit and the benefit of his family members by hiring his family members to operate and manage the POA while concurrently working for his other conflicted business entities and also failing to properly apply association-related fees and dues to those parcels of land which are owned and controlled by DEFENDANTS COACHILLIN, KENNETH, and WILLIAM.

162.   PLAINTIFF has been and will continue to be damaged as a result of DEFENDANT KENNETH'S breach and violation of his fiduciary duties which are and continue to be owned to the PLAINTIFF.

163.   As a direct and proximate result of DEFENDANT KENNETH'S breach and violation of his fiduciary duties, as is set forth herein, PLAINTIFF was and continues to be damaged in an amount to be determined at trial, but which is in excess of this Court's minimum jurisdictional amount.

///
///
///
///
///
///

# FIFTH CAUSE OF ACTION

## Fraud – Intentional Misrepresentation

PLAINTIFF DHS VERDE against DEFENDANTS COACHILLIN,

KENNETH, WILLIAM, and DOES 1 through 50, Inclusive

164.   PLAINTIFF realleges and incorporates by reference each and every allegation contained within paragraphs 1 through 163 inclusive, as if the same were fully set forth herein.

165.   As is previously set forth herein, PLAINTIFF is informed and believes and thereon alleges that prior to and throughout each stage of the respective transaction being set forth herein for the purchase of the PLAINTIFF'S parcel of land within the Development, DEFENDANTS COACHILLIN, KENNETH,  and WILLIAM each intentionally set forth and/or otherwise directed the other DEFENDANTS and/or their respective agents to intentionally set forth a series of various oral and written material misrepresentations to the PLAINTIFF and/or its respective authorized agents, all in a concerted and intentional effort and scheme to fraudulently induce the PLAINTIFF to enter into its Vacant Land Purchase Agreement for the purchase of the PLAINTIFF'S parcel of land within the Development.

166.   PLAINTIFF is informed and believes and thereon alleges that said numerous material misrepresentations that were rendered by and/or on behalf of DEFENDANTS COACHILLIN, KENNETH, and WILLIAM to the PLAINTIFF and/or its respective authorized agents, include but are not limited to those material misrepresentations that COACHILLIN would be developing, constructing, and/or otherwise installing the entire infrastructure for the Development at their own expense, including all roads, electricity, gas, water, and sewer, as well as all such represented Amenities within the Development by such specifically represented dates and timelines, all as are delineated herein.  Additionally, DEFENDANTS COACHILLIN, KENNETH, and  WILLIAM  made and/or directed such other

COMPLAINT FOR DAMAGES

DEFENDANTS to make additional material misrepresentations to the PLAINTIFF and/or its respective authorized agents that each such respective parcel of land would be partially improved by DEFENDANT COACHILLIN with all such electricity, gas, water, and sewer-related utilities stubbed-into each such respective parcel, including that which is now owned by the PLAINTIFF, and that each of the parcels, including that which is owned by the Plaintiff, would be ready for construction, all at DEFENDANT COACHILLIN's cost and expense, and thus, not at the cost and expense of the PLAINTIFF, as is set forth herein.

167. PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS COACHILLIN, KENNETH, and WILLIAM intentionally represented and/or directed and continued to intentionally represent and/or direct the DEFENDANTS to set forth each of the above-referenced material representations to the PLAINTIFF and/or its authorized agents throughout the course of their dealings, even though said DEFENDANTS knew that such above-referenced material representations being rendered by them were, in fact, false and misleading. PLAINTIFF is informed and believes and thereon alleges that during all relevant times herein, DEFENDANTS COACHILLIN, KENNETH, and WILLIAM harbored a secret intent to intentionally and knowingly induce the PLAINTIFF to enter into its Vacant Land Purchase Agreement with DEFENDANT COACHILLIN and to pay DEFENDANT COACHILLIN all such substantial monies set forth therein in furtherance of each of those above-referenced material representations being made by or on behalf of each such DEFENDANT, all to the benefit of such DEFENDANTS and at the PLAINTIFF'S expense and detriment.

168. PLAINTIFF is informed and believes and thereon alleges that said DEFENDANTS intentionally, deceptively, and dishonestly assured the PLAINTIFF and/or its respective agents that said DEFENDANTS would abide by the terms and conditions of the parties' Vacant Land Purchase Agreement as well as those various representations being made by and/or on behalf of each such

COMPLAINT FOR DAMAGES

DEFENDANT, despite such DEFENDANTS never actually having any intention and/or ability to even do so.

169.   PLAINTIFF is informed and believes and thereon alleges that at all times relevant herein, the PLAINTIFF and/or its respective representatives relied upon those material representations being proffered by and/or on behalf of DEFENDANTS COACHILLIN, KENNETH, and WILLIAM, as are set forth herein, and that the PLAINTIFF and/or its respective representatives believed such material representations being set forth by and/or on behalf of said DEFENDANTS to be true.   Moreover, albeit fraudulent and deceitful, such oral and written representations were made by and/or on behalf of each such applicable DEFENDANT with the intent of inducing the PLAINTIFF and/or its respective representatives to rely upon them, and such representations were material and vital to the respective transaction between the parties, as is set forth within this Complaint.   PLAINTIFF and/or its respective representatives reasonably and justifiably relied upon each of those written and oral representations being rendered by and/or on behalf of DEFENDANTS COACHILLIN, KENNETH, and WILLIAM, and in furtherance of such reasonable and justified reliance, PLAINTIFF and/or its respective representatives entered into such Vacant Land Purchase Agreement and thereafter provided DEFENDANT COACHILLIN with substantial sums of monies in furtherance thereof, all as is set forth and established herein.

170.   PLAINTIFF is informed and believes and thereon alleges that at all times relevant herein, that PLAINTIFF and/or its respective representatives were unaware of the falsity of DEFENDANTS COACHILLIN'S, KENNETH'S, and WILLIAM'S representations and that the PLAINTIFF and/or its respective representatives did not know such DEFENDANTS' true intentions at the time that such parties entered into the Vacant Land Purchase Agreement and/or when

PLAINTIFF and/or its respective assignors thereafter provided DEFENDANT COACHILLIN with substantial sums of monies in furtherance thereof.

171.   PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS COACHILLIN, KENNETH,  WILLIAM, , and each of their respective representatives knew, at all relevant times herein, that their representations to the PLAINTIFF and/or its respective authorized representatives were material and deceptive when they made such dishonest representations and concealed their continuing course of illegal conduct, as such fraudulent representations and concealment of illegal conduct was necessary to induce and thereby cause the PLAINTIFF to enter into its Vacant Land Purchase Agreement with DEFENDANT COACHILLIN and thereafter provide DEFENDANT COACHILLIN with substantial sums of monies in furtherance thereof.

172.   PLAINTIFF is informed and believes and thereon alleges that as a direct and proximate result of DEFENDANTS COACHILLIN'S, KENNETH'S, and WILLIAM'S intentional and malicious fraud and deceit, as is set forth within this Complaint, the PLAINTIFF has been harmed and continues to be damaged in an amount to be determined at trial, but which is in excess of this Court's minimum jurisdictional amount.

173.   PLAINTIFF is informed and believes and thereon alleges that the conduct of DEFENDANTS COACHILLIN, KENNETH, and WILLIAM, as described within this Complaint, was at all times relevant herein, intentional, willful, fraudulent, and induced the reliance of the PLAINTIFF and/or its respective representatives, and at all times, the PLAINTIFF is and has remained harmed due to such intentional fraudulent, deceitful, and reckless conduct of such DEFENDANTS.  Consequently, PLAINTIFF is entitled to general, punitive, and exemplary damages against DEFENDANTS COACHILLIN, KENNETH, and WILLIAM in an amount to be determined at the time of trial.

///

COMPLAINT FOR DAMAGES

**SIXTH CAUSE OF ACTION**

**Negligent Misrepresentation**

PLAINTIFF DHS VERDE against DEFENDANTS COACHILLIN,

KENNETH, WILLIAM, and DOES 1 through 50, Inclusive

174.   PLAINTIFF realleges and incorporates by reference each and every allegation contained within paragraphs 1 through 173, inclusive, as if the same were fully set forth herein.

175.   As delineated herein, the PLAINTIFF is informed and believes and thereon alleges that prior to and at the time of the parties engaging in their transaction for the purchase and sale of the PLAINTIFF'S parcel of land within the Development, DEFENDANTS COACHILLIN, KENNETH, and WILLIAM each set forth and/or otherwise directed said DEFENDANTS to set forth a series of various oral and written material misrepresentations to the PLAINTIFF and/or its respective authorized representatives concerning the Development.  Although each of the aforementioned representations were expressly represented by and/or otherwise on behalf of and/or otherwise under the direction of each such DEFENDANT to the PLAINTIFF and/or its authorized representatives as a true fact in an effort to induce and thereby cause the PLAINTIFF and/or its respective representatives to enter into its Vacant Land Purchase Agreement with DEFENDANT    COACHILLIN    and    thereafter    provide    DEFENDANT COACHILLIN with substantial sums of monies in furtherance thereof, such written and oral representations being rendered by and/or otherwise under the direction of DEFENDANTS COACHILLIN, KENNETH, and WILLIAM were actually false.

176.   In the alternative to the allegations set forth within this Complaint, PLAINTIFF is otherwise informed and believes and thereon alleges that while DEFENDANTS COACHILLIN, KENNETH, and WILLIAM may have honestly believed that such oral and written representations were true, that said DEFENDANTS, as the parties who would have actual knowledge of the truth of

COMPLAINT FOR DAMAGES

all such factual representations, had no actual reasonable grounds to believe that such representations were true.

177. PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS COACHILLIN, KENNETH, and WILLIAM intended to induce the PLAINTIFF and/or its authorized representatives in entering into the transactions set forth within this Complaint and thereby provide DEFENDANT COACHILLIN with substantial sums of monies in furtherance thereof, in reliance upon their material misrepresentations. PLAINTIFF is informed and believes and thereon alleges that each such DEFENDANT knew or should have known that because of their representations, PLAINTIFF and/or its respective representatives would rely upon said representations being made to it by and/or on behalf of said DEFENDANTS and thereby agreed to enter into the transactions set forth within this Complaint in reliance upon said misrepresentations.

178. PLAINTIFF is informed and believes and thereon alleges that at all times relevant herein, the PLAINTIFF was unaware of the falsity of DEFENDANTS COACHILLIN'S, KENNETH'S, and WILLIAM'S representations at the time they were made, and thus, the PLAINTIFF and/or its authorized representatives reasonably relied upon said DEFENDANTS' representations.

179. PLAINTIFF is informed and believes and thereon alleges that as a direct and proximate result of DEFENDANTS COACHILLIN'S, KENNETH'S, and WILLIAM'S misrepresentations, as are set forth within this Complaint, the PLAINTIFF has been harmed and continues to be damaged in an amount to be determined at trial, but which is in excess of this Court's minimum jurisdictional amount.

180. PLAINTIFF is informed and believes and thereon alleges that the misrepresentations of said DEFENDANTS, as described within this Complaint, induced the reliance of the PLAINTIFF and/or its authorized representatives, and

at all times set forth herein, the PLAINTIFF is and continues to remain harmed. Consequently, the PLAINTIFF is entitled to general and compensatory damages against DEFENDANTS COACHILLIN, KENNETH, and WILLIAM in an amount to be determined at the time of trial.

## SEVENTH CAUSE OF ACTION

### Fraud - Concealment

PLAINTIFF DHS VERDE against DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, MICHAEL, and DOES 1 through 50, Inclusive

181.   PLAINTIFF realleges and incorporates by reference each and every allegation contained within paragraphs 1 through 180, inclusive, as if the same were fully set forth herein.

182.   As is previously set forth herein, PLAINTIFF is the owner of a parcel of land within the Development commonly known as "Parcel 28."

183.   Prior to such date that the PLAINTIFF entered into its Vacant Land Purchase Agreement for the purchase and sale of its parcel of land within the Development, DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL intentionally concealed and/or otherwise caused such other DEFENDANTS and/or their respective agents to conceal from the PLAINTIFF and/or its authorized representatives a series of material facts concerning their potential purchase of land as well as that which was to occur within the Development.  For example, as is set forth throughout this Complaint, at all relevant times set forth herein, such DEFENDANTS concealed, suppressed, and/or otherwise withheld the material fact that such DEFENDANTS would not actually be developing, constructing, and/or otherwise installing all such previously represented utilities and/or Amenities, in the manner and within the timelines previously represented, nor were such DEFENDANTS actually going to be developing, constructing, and/or otherwise installing all such requisite and

previously represented and agreed-upon infrastructure for the Development and that it was said DEFENDANTS' actual intent to thereafter attempt to require and demand that the PLAINTIFF pay significant additional monies and fees, all of which were further concealed, suppressed, and/or otherwise intentionally not disclosed to the PLAINTIFF throughout the process of its purchase of land within the Development.

184.   Additionally, as is further set forth herein, throughout the process of the PLAINTIFF'S purchase of land within the Development, DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL further intentionally concealed and/or otherwise caused such other DEFENDANTS and/or their respective agents to conceal from the PLAINTIFF and/or its authorized representatives the actual status of and the inability for such DEFENDANTS to actually obtain and/or otherwise have access to the requisite utilities and other infrastructure which was necessary for the PLAINTIFF to use so as to be able to sufficiently develop and construct the requisite improvements upon its parcel of land, and thereafter operate within, in order to be able to further its business operations.  For example, PLAINTIFF is informed and believes and thereon alleges that, despite representing to the PLAINTIFF and/or its authorized representatives that PLAINTIFF would have access to electrical utilities by no later than the end of 2018, such DEFENDANTS knew that it was actually an impossibility for the PLAINTIFF to obtain such electrical access within the time-periods previously represented by said DEFENDANTS to the PLAINTIFF and/or its authorized representatives, and thus, such DEFENDANTS concealed and/or otherwise caused such other DEFENDANTS and/or their respective agents to conceal such material facts from the PLAINTIFF and/or its authorized representatives.

185.   PLAINTIFF is informed and believes and thereon alleges that due to the nature of the relationship and actions and/or inactions of the parties, as are set forth herein, all such factual occurrences which were and/or were otherwise caused

to be concealed and suppressed by DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL were solely known by said DEFENDANTS, and thus, could not reasonably be discovered by the PLAINTIFF.

186.  PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL knowingly, intentionally, and willfully concealed and/or otherwise caused such DEFENDANTS and/or their respective agents to conceal and suppress such material facts and circumstances from the PLAINTIFF and/or its authorized representatives as such DEFENDANTS knew that if they had not concealed and suppressed such material information from the PLAINTIFF and/or its representatives, that PLAINTIFF and/or its authorized representatives would not have acted in the manner that they had, including without limitation, purchasing its parcel of land for such agreed-upon purchase price.  As such, said DEFENDANTS all acted in a concerted and intentional effort to substantially benefit themselves and their respective interests to the significant detriment of the PLAINTIFF.

187.  PLAINTIFF is informed and believes and thereon alleges that, as is set forth herein, PLAINTIFF and/or its authorized representatives were unaware of the concealed and suppressed facts and circumstances relating to the DEFENDANTS' actual intentions, the overall Development, the ability for all such utilities to be delivered to the PLAINTIFF'S parcel, as promised, and its parcel of land located therein.  Moreover, had the PLAINTIFF and/or its authorized representatives known and/or otherwise been apprised of all such facts which were and/or were otherwise caused to be intentionally and deliberately concealed, suppressed, and withheld by DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL, the PLAINTIFF and/or its authorized representatives would not have acted in the manner that they did.  Specifically, had such DEFENDANTS disclosed each of those material facts and circumstances to the PLAINTIFF and/or its authorized representatives, the PLAINTIFF would not

have chosen to close upon its purchase of land within the Development upon the terms and conditions set forth within its Vacant Land Purchase Agreement.

188.  As a direct and proximate result of DEFENDANTS COACHILLIN'S, KENNETH'S, KATHERINE'S, WILLIAM'S, and MICHAEL'S intentional and deliberate concealment and suppression of all such material facts and circumstances, as is set forth herein, PLAINTIFF has and continues to be harmed. Consequently, PLAINTIFF is entitled to general, punitive, and exemplary damages against DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL, in an amount to be determined at trial.

## **EIGHTH CAUSE OF ACTION**

**Violation of Racketeering Influenced and Corruption Organization Act ("RICO")**

**[18 U.S.C. §1961 *et seq.*]**

PLAINTIFF DHS VERDE against DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, POA, KENNETH, WILLIAM, KIRSTEN, KATHERINE, MICHAEL, and DOES 1 through 50, Inclusive

189.  PLAINTIFF realleges and incorporates by reference each and every allegation contained within paragraphs 1 through 188, inclusive, as if the same were fully set forth herein.

190. PLAINTIFF and DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, POA, KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL are each "persons," as that term is defined in 18 U.S.C. § 1961(3).

191.  PLAINTIFF is informed and believes and thereon alleges that at all relevant times, in violation of 18 U.S.C. § 1962(c), DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, POA, KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL engaged and/or participated, directly

COMPLAINT FOR DAMAGES

and/or indirectly, in the affairs of an association-in-fact enterprise identified herein, the affairs of which affected interstate commerce through a pattern of racketeering activity.

192. PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, POA, KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL, by and through their own conduct and participation and/or through their associations in fact, engaged and/or participated in, directly or indirectly, a pattern of racketeering activity as defined in 18 U.S.C. § 1961(1). Such racketeering activity includes, but is not limited to, violation on at least two occasions of 18 U.S.C. §§ 1951 (extortion), 1341 (mail fraud), 1343 (wire fraud), 1513 (retaliating against a victim), all during the relevant time periods as set forth within this Complaint, by and through, among other things, using the mails, telephone, internet communications, e-mail, and/or other devices and methods to threaten PLAINTIFF.

193. DEFENDANTS COACHILLIN'S, ENERGY'S, ECOMASTER'S, POA'S, KENNETH'S, WILLIAM'S, KIRSTEN'S, KATHERINE'S, and MICHAEL'S association in fact with one another in the continued conduct of their business, as is more fully set forth within this Complaint, constitutes an "Enterprise" within the meaning of RICO.

194. PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS COACHILLIN'S, ENERGY'S, ECOMASTER'S, POA'S, KENNETH'S, WILLIAM'S, KIRSTEN'S, KATHERINE'S, and MICHAEL'S conduct, actions, and/or inactions, as more fully described herein, establishes that all such DEFENDANTS devised and/or intended to devise a scheme or artifice to defraud and/or injure, as alleged herein, through the use of the United States mails and wires in interstate and foreign commerce and otherwise used fraudulent and deceptive means as herein alleged to unlawfully obtain the property and/or monies of the PLAINTIFF.

COMPLAINT FOR DAMAGES

195.   PLAINTIFF is informed and believes and thereon alleges that, at all relevant times herein, each of the DEFENDANT members of the Enterprise were involved in the continuing coordination of activities between the Individual DEFENDANTS and the Enterprise. As to each DEFENDANT, there was a common communication network by which information concerning the Enterprise was exchanged on a regular basis. PLAINTIFF is informed and believes and thereon alleges that typically such communications occurred by the use of electronic mail, text message, and/or the telephone in which each such DEFENDANT planned and coordinated the operation of the Enterprise as alleged herein and ran its continuing operation.

196.   PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS' illegal conduct and wrongful practices were carried out by an array of employees, as well as by consultants, agents, and co-conspirators of said DEFENDANTS, who also necessarily relied upon frequent transfers of documents and information and funds by the use of U.S. mails and interstate wire facilities, which included without limitation, the use of electronic mail, text message, and/or the telephone.

197.   PLAINTIFF is informed and believes and thereon alleges that each of the DEFENDANTS' intentional, malicious, deceptive, and concerted attempts to gain substantial monies from the PLAINTIFF that the DEFENDANTS were otherwise never entitled to, all through their unlawful conduct as is alleged within this Complaint, is an act of wire and mail fraud.  Alleging each of the precise dates each of the intentional, malicious, deceptive, and concerted efforts by the DEFENDANTS would be unreasonably burdensome and to some extent not possible without conducting discovery.   Many of the precise dates of said DEFENDANTS' uses of the U.S. mails and interstate wire facilities (and corresponding RICO predicate acts of violations of 18 U.S.C. Section 1951 (extortion), and violations of 18 U.S.C. Section 1341 (mail fraud), and violations

COMPLAINT FOR DAMAGES

of 18 U.S.C. Section 1343 (wire fraud) and violations of 18 U.S.C. Section 1513 (retaliating against a victim) have been hidden and cannot be alleged without access to the each of the DEFENDANTS' books and records.  Indeed, an essential part of the successful operation of the Enterprise alleged herein depended upon secrecy and said DEFENDANTS took deliberate steps to conceal their wrongdoing and to pressure and influence those operating outside of the Enterprise to not reveal information learned or revealed to them by unlawful means. PLAINTIFF has, however, described herein more than two occasions on which the RICO predicate acts of mail fraud, wire fraud, extortion, and retaliation against the PLAINTIFF occurred as well as how those acts by said DEFENDANTS were in furtherance of the Enterprise.

198.   Under the provisions of 18 U.S.C. § 1964(c), DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, POA, KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL are jointly and severally liable to the PLAINTIFF for three times the damages that PLAINTIFF has sustained, plus all such additional costs and fees incurred by the PLAINTIFF in bringing this suit, including all reasonable attorneys' fees.

199.   As a direct and proximate result of DEFENDANTS COACHILLIN'S, ENERGY'S, ECOMASTER'S, POA'S, KENNETH'S, WILLIAM'S, KIRSTEN'S, KATHERINE'S, and MICHAEL'S racketeering activities as described herein, PLAINTIFF has suffered injury to its businesses and property in an amount to be proven at trial, but which exceeds this Court's minimum jurisdictional amount.

///
///
///
///
///

## **NINTH CAUSE OF ACTION**

### **Conspiracy To Violate RICO**

PLAINTIFF DHS VERDE against DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, POA, KENNETH, WILLIAM, KIRSTEN, KATHERINE, MICHAEL, and DOES 1 through 50, Inclusive

200.   PLAINTIFF realleges and incorporates by reference each and every allegation contained within paragraphs 1 through 199, inclusive, as if the same were fully set forth herein.

201. PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, POA, KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL conspired and agreed among themselves to violate 18 U.S.C. §1962 as set forth in the Eighth Cause of Action above.

202. PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, POA, KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL further agreed to violate said statute for the purpose of destroying and/or diminishing PLAINTIFF'S business and financial interests and to otherwise injure the PLAINTIFF, all to the benefit of said DEFENDANTS so as to enrich themselves.

203.   PLAINTIFF is informed and believes and thereon alleges that at all times relevant herein, DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, POA, KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL, did and engaged in all such conduct, actions and/or inactions as alleged herein pursuant to, and in furtherance of, their conspiracy, scheme, enterprise, and their above-alleged agreement.

204.   PLAINTIFF is informed and believes, and thereon alleges that each of the aforementioned DEFENDANTS furthered the conspiracy, scheme, and/or

enterprise by cooperation with, and/or lent aid and encouragement to, and/or ratified and adopted the conduct, actions and/or inactions, as alleged herein, of each of the other DEFENDANTS. DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, POA, KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL are therefore liable for all of the acts, omissions, and/or breaches of the others, all of which were done in furtherance of the conspiracy and for the benefit of any or all of the co-conspirators.

205.   PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, POA, KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL continue through the present to commit overt acts in furtherance of the above-described conspiracy. As a direct and proximate result of this conspiracy and agreement, PLAINTIFF has been damaged, and continues to be damaged, all in an amount to be proven at the time of trial, but which is in excess of this Court's minimum jurisdictional amount.

## **TENTH CAUSE OF ACTION**

### **Real Estate Seller's Nondisclosure of Material Facts**

PLAINTIFF DHS VERDE against DEFENDANTS COACHILLIN,

KENNETH, KATHERINE, WILLIAM, MICHAEL,

and DOES 1 through 50, Inclusive

206.   PLAINTIFF realleges and incorporates by reference each and every allegation contained within paragraphs 1 through 205, inclusive, as if the same were fully set forth herein.

207.   As is delineated herein, PLAINTIFF is the owner of a parcel of land within the Development commonly known as "Parcel 28." PLAINTIFF purchased said parcel of land from DEFENDANT COACHILLIN.

208.   Prior to the PLAINTIFF entering into its Vacant Land Purchase Agreement for the purchase and sale of its parcel of land within the Development,

DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL failed to disclose and/or otherwise caused such other DEFENDANTS to fail to disclose to the PLAINTIFF a series of material facts concerning its purchase of land as well as that which was to occur within the Development. For example, each such DEFENDANT failed to disclose to the PLAINTIFF and/or its authorized representatives that said DEFENDANTS would not actually be developing, constructing, and/or otherwise installing all such represented Amenities and utilities in the manner and within the timelines previously represented, nor were such DEFENDANTS actually going to be developing, constructing, and/or otherwise installing all such requisite, represented, and agreed-upon infrastructure for the Development, and that said DEFENDANTS actually intended to thereafter attempt to require and demand that the PLAINTIFF pay significant additional monies and fees, which were also never disclosed, in an effort to pay for portions of the Development's requisite infrastructure.

209. PLAINTIFF is informed and believes and thereon alleges that the material information being intentionally undisclosed by such DEFENDANTS from the PLAINTIFF has and continues to significantly affect the value of the PLAINTIFF'S respective parcels of land as well as the PLAINTIFF'S desire to purchase said parcels of land. PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL each knew that the material facts being intentionally undisclosed by them to the PLAINTIFF would significantly reduce the value, desirability, and/or marketability of the PLAINTIFF'S parcel of land, as well as PLAINTIFF'S ability to sufficiently and timely construct and use improvements upon its parcel, and thus, said DEFENDANTS intentionally failed to disclose and/or otherwise caused such other DEFENDANTS to fail to disclose such material facts to the PLAINTIFF, all in a concerted and intentional effort to substantially benefit themselves and their respective interests.

COMPLAINT FOR DAMAGES

210. PLAINTIFF is informed and believes and thereon alleges that prior to the closing of each of the transactions which are set forth within this Complaint, DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL knowingly and intentionally deceived the PLAINTIFF and/or otherwise knowingly and intentionally did not disclose material facts and/or otherwise caused for the nondisclosure of such material facts from the PLAINTIFF, all to the significant detriment and damage of the PLAINTIFF.

211. PLAINTIFF is informed and believes and thereon alleges that at no time prior to the closing of the transaction set forth within this Complaint did the PLAINTIFF and/or its authorized representatives know of nor could they reasonably have discovered the existence of such material facts which were being knowingly and intentionally undisclosed by and/or on behalf of such DEFENDANTS.

212. PLAINTIFF is informed and believes and thereon alleges that at all times relevant herein, DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL each knew that the PLAINTIFF did not know nor could they have reasonably discovered all such material facts being undisclosed by said DEFENDANTS.

213. PLAINTIFF is informed and believes and thereon alleges that had DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL disclosed and/or cause to be disclosed all such previously undisclosed material facts to the PLAINTIFF prior to such time that the PLAINTIFF entered into its Vacant Land Purchase Agreement that the PLAINTIFF would not have entered into such Vacant Land Purchase Agreement based upon the terms and conditions set forth therein.

214. As a direct and proximate result of such DEFENDANTS' intentional nondisclosure of material facts to the PLAINTIFF, as is set forth herein, the PLAINTIFF has been harmed and continues to be damaged in an amount to be

determined at trial, but which is in excess of this Court's minimum jurisdictional amount.  Further, as is set forth herein, the PLAINTIFF has been and continues to be harmed and damaged by such DEFENDANTS' unlawful and improper attempts to charge significant additional, unfounded, and unilaterally imposed infrastructure-related charges upon the PLAINTIFF, despite the fact that such DEFENDANTS have never even provided electricity, nor have they provided or intended to ever provide, the requisite onsite interim sewage septic system which was to service the PLAINTIFF'S parcel of land.

215.  PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS COACHILLIN'S, KENNETH'S, KATHERINE'S, WILLIAM'S, and MICHAEL'S conduct in failing to disclose and/or otherwise causing for such failure to disclose all such material facts to the PLAINTIFF, as is set forth herein, was and continues to be a substantial factor in causing the PLAINTIFF'S harms and damages.

216.  The conduct, actions, and/or inactions of DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL, as are set forth within this Complaint, were, have been, and continue to be despicable and were intentionally carried on by each of them with willful and conscious disregard for the PLAINTIFF'S rights and/or interests.  DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL were aware of the probable consequences of their conduct and willfully and deliberately failed to engage in actions to avoid these consequences.  The conduct, actions, and/or inactions of DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL constitutes malice, oppression, and/or fraud such that PLAINTIFF is entitled to recover punitive damages against DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL.  As the owners, principles, directors, and managing agents of DEFENDANT COACHILLIN, the conduct, actions, and/or inactions of DEFENDANT

COMPLAINT FOR DAMAGES

COACHILLIN were known, ratified, approved, directed, and supported by DEFENDANTS KENNETH and WILLIAM.   Consequently, PLAINTIFF is entitled to general, punitive, and exemplary damages against DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL in an amount to be determined at the time of trial.

## ELEVENTH CAUSE OF ACTION

### Intentional Interference with Contractual Relations

PLAINTIFF against DEFENDANTS COACHILLIN, KENNETH,

and DOES 1 through 50, Inclusive

217.   PLAINTIFF realleges and incorporates by reference each and every allegation contained within paragraphs 1 through 216, inclusive, as if the same were fully set forth herein.

218.   As is set forth herein, in or about September 2021, PLAINTIFF and third-party California New Co, LLC entered into that certain written California New Co Agreement whereby PLAINTIFF and California New Co, LLC agreed that PLAINTIFF would sell to California New Co, LLC and that California New Co, LLC would purchase from PLAINTIFF the PLAINTIFF'S parcel of land within the Development, all improvements and structures previously constructed by the PLAINTIFF thereon, as well as all of the PLAINTIFF'S other business properties and assets located therein for the total purchase price of Three Million Six Hundred Thousand Dollars and 0/100 cents ($3,600,000.00).

219.   PLAINTIFF is informed and believes and thereon alleges that following the time that PLAINTIFF and third-party California New Co, LLC entered into the California New Co Agreement that DEFENDANTS COACHILLIN and KENNETH each became aware of said agreement and were even informed of said agreement by California New Co, LLC.

220.   As is set forth herein, PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS COACHILLIN and KENNETH, with knowledge of said California New Co Agreement, engaged in a series of intention and egregious actions in a concerted and intentional effort to sabotage, disrupt, and/or otherwise interfere with the California New Co Agreement, and thereby prevented California New Co, LLC's performance of its obligations under said agreement, all to the significant detriment and damage of the PLAINTIFF.

221.   PLAINTIFF is informed and believes and thereon alleges that, at all times relevant herein, DEFENDANT COACHILLIN'S and KENNETH'S egregious and intentional actions were designed to disrupt and did cause disruption and interference with the performance of the California New Co Agreement.

222.   PLAINTIFF is informed and believes and thereon alleges that as a direct and proximate result of the intentional and calculated actions being engaged in by DEFENDANTS COACHILLIN and KENNETH, as are set forth herein, that the California New Co Agreement which previously existed was interfered with and terminated by California New Co, LLC, all of which caused the PLAINTIFF to suffer significant damages.  Consequently, PLAINTIFF is entitled to general and compensatory damages against DEFENDANTS COACHILLIN and KENNETH in an amount to be determined at the time of trial.

## TWELFTH CAUSE OF ACTION

### Declaratory Relief

PLAINTIFF DHS VERDE against DEFENDANTS COACHILLIN,

POA, KENNETH, WILLIAM, KIRSTEN, KATHERINE,

and DOES 1 through 50, Inclusive

223.   PLAINTIFF realleges and incorporates by reference each and every allegation contained within paragraphs 1 through 222, inclusive, as if the same were fully set forth herein.

224. As is set forth herein, PLAINTIFF and DEFENDANT COACHILLIN, as well as DEFENDANT KENNETH on behalf of DEFENDANT COACHILLIN, entered into the Vacant Land Purchase Agreement for the purchase and sale of the parcel of land within the Development commonly known as "Parcel 28."

225. As is set forth herein, to date, PLAINTIFF has received demands by the DEFENDANTS for the payment of substantial fees and costs that the PLAINTIFF is not even legally obligated to pay pursuant to its Vacant Land Purchase Agreement, the CC&R's, as well as those other documents governing the Development.

226. PLAINTIFF has further been levied excessive, disproportionate, and improper assessments and fees by DEFENDANTS POA, COACHILLIN, KENNETH, WILLIAM, KIRSTEN, and KATHERINE in order to fund DEFENDANTS COACHILLIN'S, KENNETH'S, and WILLIAM'S Initial Common Infrastructure and Common Area Expenses at the Development, as well as to otherwise impermissibly and improperly benefit said DEFENDANTS.

227. An actual controversy has now arisen and exists between DEFENDANTS POA, COACHILLIN, KENNETH, WILLIAM, KIRSTEN, KATHERINE, and the PLAINTIFF concerning their respective rights and obligations associated with the Vacant Land Purchase Agreement and the CC&R's, as well as the parties' obligations to pay for assessments, costs, and/or other fees concerning the Development. PLAINTIFF contends that pursuant to its Vacant Land Purchase Agreement it is only obligated to pay the agreed upon Purchase Price and costs as are delineated therein. DEFENDANTS POA, COACHILLIN, KENNETH, WILLIAM, KIRSTEN, and KATHERINE erroneously contend that the PLAINTIFF is also required to pay substantial additional fees and costs which were never disclosed to the PLAINTIFF, including without limitation, those relating to "stub-in" connection fees.

228.   There exists a substantial controversy of sufficient immediacy and reality to warrant declaratory relief in favor of the PLAINTIFF.

229.   A judicial declaration is necessary and appropriate pursuant to Cal. Civ. Proc. Code Section 1060.

## THIRTEENTH  CAUSE OF ACTION

### Unlawful and Unfair Business Acts and Practices
### CA Bus. & Prof. Code §17200, *et seq.*

PLAINTIFF DHS VERDE against DEFENDANTS COACHILLIN, ECOMASTER, ENERGY, KENNETH, WILLIAM,

and DOES 1 through 50, Inclusive

230.   PLAINTIFF realleges and incorporates by reference each and every allegation contained within paragraphs 1 through 229, inclusive, as if the same were fully set forth herein.

231.   The primary purpose of California's Unfair Competition Law ("UCL") is to preserve fair business competition.

232.   By engaging in the acts, inactions, and/or practices as alleged throughout this Complaint, DEFENDANTS COACHILLIN, ECOMASTER, ENERGY, KENNETH, and WILLIAM have committed acts of unfair competition, as that term is defined and used in Cal. Bus. & Prof. Code §17200, *et seq.*, which prohibits *"any unlawful, unfair, or fraudulent business act or practice…"*

233.   The UCL imposes strict liability.  As such, PLAINTIFF need not prove that DEFENDANTS COACHILLIN, ECOMASTER, ENERGY, and/or KENNETH intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices, but rather, only that such practices occurred.

234.   Under the UCL, a business act or practice is "unfair" if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing

COMPLAINT FOR DAMAGES

the reasons, justifications, and motives of such act or practice against the impact or gravity of the harm to the alleged victims.

235.   Under the UCL, a business act or practice is "fraudulent" if it is likely to deceive members of the consuming public.

236.   Under the UCL, a business act or practice is "unlawful" if it is forbidden by law.

237.   PLAINTIFF is within the class intended to be protected by Cal. Bus. & Prof. Code §17200, *et seq.*

238.   As is alleged herein DEFENDANTS COACHILLIN, ECOMASTER, ENERGY, KENNETH, and WILLIAM have engaged in a series of unlawful and unfair business practices which have not only caused and continue to cause the PLAINTIFF to be substantially harmed and damaged, but which also have caused the general public to be substantially harmed and damaged.  For example, as is previously set forth herein by the PLAINTIFF, the PLAINTIFF is informed and believes and thereon alleges that despite DEFENDANT COACHILLIN being expressly obligated by multiple governmental agencies to develop and construct the overall Development and all infrastructure relating thereto in accordance with those specific requirements which are set forth within the above-referenced Development-related permits, plans, orders, agreements, and/or the like, DEFENDANT COACHILLIN has failed and continues to fail to do so.  Moreover, as is also set forth herein, PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS COACHILLIN, ECOMASTER, KENNETH, and WILLIAM have been and continue to unlawfully dispose of and/or otherwise knowingly allow for the unlawful disposal of contaminated cannabis wastewater and used / fertilized cannabis soil by spraying and/or otherwise dumping all such contaminated cannabis waste throughout the Development as well as upon those lands which are adjacent to the Development but which are believed to be owned by DEFENDANT WILLIAM, all of which is not only unlawful, but are also extremely detrimental

and damaging to the Development as well as the health and safety of those within the Development, and which are also extremely detrimental and harmful to local environmental conditions and can have grave negative consequences for the local community as a whole should such contaminated and unlawfully disposed of cannabis waste infiltrate the local ground water wells and airways.

239.   Additionally, as is also set forth herein, PLAINTIFF is informed and believes, and thereon alleges that said DEFENDANTS, through the use and conduit of DEFENDANT ENERGY, have been and continue to operate that Offsite Wastewater Treatment and Disposal System upon DEFENDANT WILLIAM'S land, which is not even properly and/or fully permitted by all necessary governmental agencies, nor is DEFENDANT ENERGY or   DEFENDANT WILLIAM even the "permitted Discharger" to operate said Offsite Wastewater Treatment and Disposal System, and thus, DEFENDANT ENERGY and DEFENDANT WILLIAM are engaging in unlawful business practices.

240.   By engaging in the acts and practices that are alleged throughout this Complaint, DEFENDANTS COACHILLIN, ECOMASTER, ENERGY, KENNETH, and WILLIAM have committed acts of unfair competition, as that term is defined and used in the UCL.

241.   Pursuant to the UCL, PLAINTIFF is entitled to preliminary and permanent injunctive relief and an order against DEFENDANTS COACHILLIN, ECOMASTER, ENERGY, KENNETH, and WILLIAM to cause each of them to cease their unlawful acts and practices, as well as any remedies that the Court may find equitable.

///

///

///

///

///

COMPLAINT FOR DAMAGES

## **PRAYER FOR RELIEF**

**WHEREFORE, PLAINTIFF prays for judgment against DEFENDANTS and DOES 1 through 50, jointly and severally, as follows:**

I. <u>On the First Cause of Action for Breach of Contract Against DEFENDANT COACHILLIN and DOES 1 through 50, inclusive</u>:

    1. For compensatory and general damages in an amount according to proof;

    2. For special and consequential damages in an amount according to proof;

    3. For pre-judgment and post-judgment interest according to any applicable provision of law, according to proof;

    4. For equitable remedies as provided by law;

    5. For Attorneys' fees and costs incurred in this suit, to the extent provided by law;

    6. For cost of suit incurred; and

    7. For other and further relief as the Court deems just.

II. <u>On the Second Cause of Action for Breach of CC&Rs Against DEFENDANTS POA, COACHILLIN, KENNETH, WILLIAM, KATHERINE, KIRSTEN, and DOES 1 through 50, inclusive</u>:

    1. For compensatory and general damages in an amount according to proof;

    2. For special and consequential damages in an amount according to proof;

    3. For pre-judgment and post-judgment interest according to any applicable provision of law, according to proof;

    4. For equitable remedies as provided by law;

COMPLAINT FOR DAMAGES

5. For Attorneys' fees and costs incurred in this suit, to the extent provided by law;

6. For cost of suit incurred; and

7. For other and further relief as the Court deems just.

III.   <u>On the Third Cause of Action for Breach of Fiduciary Duty Against DEFENDANTS POA, KATHERINE, KIRSTEN, and DOES 1 through 50, inclusive:</u>

1. For compensatory and general damages in an amount according to proof;

2. For special and consequential damages in an amount according to proof;

3. For exemplary and punitive damages in an amount according to proof;

4. For pre-judgment and post-judgment interest according to any applicable provision of law, according to proof;

5. For equitable remedies as provided by law;

6. For cost of suit incurred; and

7. For other and further relief as the Court deems just.

IV.   <u>On the Fourth Cause of Action for Breach of Fiduciary Duty Against DEFENDANTS KENNETH and DOES 1 through 50, inclusive:</u>

1. For compensatory and general damages in an amount according to proof;

2. For special and consequential damages in an amount according to proof;

3. For exemplary and punitive damages in an amount according to proof;

4. For pre-judgment and post-judgment interest according to any applicable provision of law, according to proof;

1   5.  For equitable remedies as provided by law;

2   6.  For cost of suit incurred; and

3   7.  For other and further relief as the Court deems just.

4

5   V.   <u>On the Fifth Cause of Action for Fraud – Intentional Misrepresentation</u>

6   <u>against DEFENDANTS COACHILLIN, KENNETH, WILLIAM, and</u>

7   <u>DOES 1 through 50, inclusive:</u>

8       1.  For compensatory and general damages in an amount according to

9           proof;

10      2.  For special and consequential damages in an amount according to

11          proof;

12      3.  For exemplary and punitive damages in an amount according to proof;

13      4.  For pre-judgment and post-judgment interest according to any

14          applicable provision of law, according to proof;

15      5.  For equitable remedies as provided by law;

16      6.  For cost of suit incurred; and

17      7.  For other and further relief as the Court deems just.

18

19   VI.  <u>On the Sixth Cause of Action for Negligent Misrepresentation against</u>

20   <u>DEFENDANTS COACHILLIN, KENNETH, WILLIAM, and DOES 1</u>

21   <u>through 50, inclusive:</u>

22      1.  For compensatory and general damages in an amount according to

23          proof;

24      2.  For special and consequential damages in an amount according to

25          proof;

26      3.  For pre-judgment and post-judgment interest according to any

27          applicable provision of law, according to proof;

28      4.  For equitable remedies as provided by law;

5. For cost of suit incurred; and

6. For other and further relief as the Court deems just.

VII.   <u>On the Seventh Cause of Action for Fraud – Concealment against DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, MICHAEL, and DOES 1 through 50, inclusive:</u>

1. For compensatory and general damages in an amount according to proof;

2. For special and consequential damages in an amount according to proof;

3. For exemplary and punitive damages in an amount according to proof;

4. For pre-judgment and post-judgment interest according to any applicable provision of law, according to proof;

5. For equitable remedies as provided by law;

6. For cost of suit incurred; and

7. For other and further relief as the Court deems just.

VIII.  <u>On the Eighth Cause of Action for Violation of Racketeering Influenced and Corruption Organization Act ("RICO") against DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, POA, KENNETH, WILLIAM, KIRSTEN, KATHERINE, MICHAEL, and DOES 1 through 50, inclusive:</u>

1. For compensatory and general damages in an amount according to proof;

2. For special and consequential damages in an amount according to proof;

3. For treble damages as provided in 18 U.S.C. §1964(c);

118

4. For pre-judgment and post-judgment interest according to any applicable provision of law, according to proof;

5. For Attorneys' fees and costs incurred in this suit, to the extent provided by law;

6. For cost of suit incurred; and

7. For other and further relief as the Court deems just.

IX. <u>On the Ninth Cause of Action for Conspiracy to Violate RICO against DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, POA, KENNETH, WILLIAM, KIRSTEN, KATHERINE, MICHAEL, and DOES 1 through 50, inclusive:</u>

1. For compensatory and general damages in an amount according to proof;

2. For special and consequential damages in an amount according to proof;

3. For treble damages as provided in 18 U.S.C. §1964(c);

4. For pre-judgment and post-judgment interest according to any applicable provision of law, according to proof;

5. For Attorneys' fees and costs incurred in this suit, to the extent provided by law;

6. For cost of suit incurred; and

7. For other and further relief as the Court deems just.

///
///
///
///
///
///

119

X.   On the Tenth Cause of Action for Real Estate Seller's Nondisclosure of Material Facts against DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, MICHAEL, and DOES 1 through 50, inclusive:

1.  For compensatory and general damages in an amount according to proof;

2.  For special and consequential damages in an amount according to proof;

3.  For exemplary and punitive damages in an amount according to proof;

4.  For pre-judgment and post-judgment interest according to any applicable provision of law, according to proof;

5.  For equitable remedies as provided by law;

6.  For cost of suit incurred; and

7.  For other and further relief as the Court deems just.

XI.   On the Eleventh Cause of Action for Intentional Interference with Contractual Relations against DEFENDANTS COACHILLIN, KENNETH, and DOES 1 through 50, inclusive:

1.  For compensatory and general damages in an amount according to proof;

2.  For pre-judgment and post-judgment interest according to any applicable provision of law, according to proof;

3.  For equitable remedies as provided by law;

4.  For cost of suit incurred; and

5.  For other and further relief as the Court deems just.

///
///
///

COMPLAINT FOR DAMAGES

XII.   On the Twelfth Cause of Action for Declaratory Relief Against DEFENDANTS COACHILLIN, POA, KENNETH, WILLIAM, KIRSTEN, KATHERINE, and DOES 1 through 50, inclusive:

1. For injunctive relief and judicial declaration by the Court;

2. For equitable remedies as provided by law;

3. For costs of suit incurred; and

4. For other and further relief as the Court deems just.

XIII.   On the Thirteenth Cause of Action for Unlawful and Unfair Business Acts and Practices CA Bus. & Prof. Code §17200, *et seq.* against DEFENDANTS COACHILLIN, ECOMASTER, ENERGY, KENNETH, WILLIAM and DOES 1 through 50, inclusive:

1. For equitable remedies as provided by law;

2. For cost of suit incurred; and

3. For other and further relief as the Court deems just.

## **DEMAND FOR JURY TRIAL**

PLAINTIFF hereby demands trial by jury on all matters and issues triable by jury.

Dated:   June 6, 2022

**THE HAKALA LAW GROUP, P.C.**
BRAD A. HAKALA

*/S/ BRAD A. HAKALA*
Brad A. Hakala
Ryan N. Ostrowski
Attorneys for Plaintiff
DHS VERDE, LLC